## Laroche *v.* Farm Bureau Mutual Automobile Insurance Co., Appellant.

Argued April 18, 1939. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Allan K. Grim,* with him *Stevens & Lee,* for appellant.

*Harold J. Ryan,* with him *Walter S. Young,* for appellee.

OPINION BY MR. JUSTICE STERN, July 3, 1939:

George Grove and Benjamin Grove, brothers living at or near Patuxent, Maryland, worked as truck drivers for their father. Each owned an automobile. On May 27, 1937, George, whose car was disabled, asked Benjamin if he might use the latter's automobile the next day to go to Washington. Benjamin consented.

As the case turns upon the terms of the permission thus granted, all of the testimony in regard to it is here given. Benjamin Grove testified as follows: "Q. What did he say to you on that occasion with respect to the use of your car the next day? A. He asked me if he could have the use of my car to go to Washington. Q. And what did you say? A. I told him he could. Q. And is that all the conversation you had about it at that time? A. Yes, that is all that I know of. There wasn't no conversation much about it, he just asked for the use of my car and I gave him permission to go to Washington. . . . Q. Did you give your brother, George Robert Grove, permission to use your car for

any purpose other than going to Washington? A. No, sir. Q. And return? A. No, sir. Q. Did you know that he was going to use your car for any other purpose? A. No, sir. Q. Did your brother have general permission to use your car whenever he chose, for any purpose that he chose? A. No, sir." George Grove testified as follows: "Q. What did you say to Benjamin with respect to this matter? A. I just asked him for the use of his car to go to Washington the next day. Q. What did he say? A. He told me I could use it. Q. And was there any further conversation between you about the matter? A. No, sir. . . . Q. Did you get permission from Benjamin to use the car for any purpose other than going to Washington and returning to Patuxent? A. No, sir. Q. At the time you talked to Benjamin on May 27th about going to Washington, did you say anything to him about using the car for any other purpose? A. No, sir. . . . Q. Had you any intention of using the car for any purpose other than going to Washington and return to Patuxent when you talked to your brother Benjamin on May 27, 1937, about the use of the car? A. No, I had not. Q. Had you received any general permission from your brother Benjamin to use the car at any time that you saw fit? A. No, sir."

On May 28 George took Benjamin's car and drove to Washington, a distance of about thirty-six miles to the southwest. Returning over the same road he came back to Patuxent in the early afternoon. He then learned that the truck which he usually drove, but which was being driven that day by some one else, had broken down at Harman's Station, about eight miles north of Patuxent; so, to quote his own testimony, "I just taken the car [Benjamin's], without even asking him for it or anything, I just took it on my own account and went up there to see what was the trouble." He repaired the truck and followed it back to a point some two or three miles north of Patuxent. Then he turned

west and traveled a distance of eight miles to Laurel, and then north on the Washington-Baltimore highway, intending to go to a place called Gittings' junk shop. Asked, "Did you have permission from him [Benjamin] to go to Gittings' junk shop?" his answer was, "No." After proceeding about five miles in the direction of this shop he changed his mind because he feared he might get back too late in case his brother, who was working that day in Baltimore, should return to Patuxent ahead of him and want to use the car. He therefore started back to Patuxent and when about three miles north of Laurel collided with an automobile in which plaintiff, Ann Laroche, was riding. She was injured and brought suit in the United States District Court at Baltimore against both George and Benjamin Grove. She was nonsuited as to Benjamin, but obtained a verdict against George, in the sum of $2,545. Being unable to collect from him on execution, she brought the present suit against defendant insurance company, which had issued a policy to Benjamin Grove containing an omnibus clause as follows: "The unqualified word 'Insured' . . . includes not only the Named Insured but also any person while using the automobile . . . ., provided : . . that the actual use is with the permission of the Named Insured." The jury returned a verdict in favor of plaintiff in the sum of $2,708.85. Defendant appeals from the refusal of the court below to enter judgment in its favor n. o. v.

There is no need to collate the numerous authorities in other jurisdictions which deal with the question here involved. Many of them are referred to in *Brower v. Employers' Liability Assurance Co., Ltd.*, 318 Pa. 440, in Appleman on Automobile Liability Insurance, pp. 111-121, in 22 American Bar Association Journal 616, 617, in 72 A. L. R. 1398-1409, and in 106 A. L. R. 1259-1263. Their study reveals that it is the rule in some states that if the original bailment was made with the consent of the insured it is immaterial that subsequently

the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession; accordingly the insurance company is held liable even though the accident happens while the car is being used on an errand not embraced within the limits of the permission given. But in the majority of jurisdictions it is held that, while slight and inconsequential deviations will not annul the coverage of the omnibus clause, there is an absence of "permission," within the meaning of the policy, if the car is being driven at a time or place or for a purpose not authorized by the insured. The difference between these two views resolves itself largely into whether, as pointed out in *Dickinson v. Maryland Casualty Co.*, 101 Conn. 369, 125 A. 866, the word "permission" is to be construed as meaning permission to use the car, or permission to use the car in a specified manner and for a specified purpose.

In our own state the trend is markedly in the direction of the majority view. In *Powers v. Wells*, 115 Pa. Superior Ct. 549,* and in *Truex v. Pennsylvania Manufacturers' Association Casualty Insurance Co.*, 116 Pa. Superior Ct. 551, in each of which there were substantial deviations from the purpose for which permission to use the car was given, it was held that there could be no recovery on the policies. In *Brower v. Employers' Liability Assurance Co., Ltd.*, supra, and in *Ferguson v. Manufacturers' Casualty Insurance Company of Philadelphia*, 129 Pa. Superior Ct. 276, 282, the question was discussed but the decisions were placed upon other grounds. In *Randig v. O'Hara*, 123 Pa. Superior Ct. 251, a general authority to operate the automobile had been given by the insured, and it was held that this was not abrogated or suspended by language which, in

* Allocatur refused by Supreme Court: 117 Pa. Superior Ct. xxix.

the opinion of the court, amounted to an expression of wishes rather than a revocation of the authority.

It is to be noted that in the present policy the phraseology employed is "provided . . . the *actual* use is with the permission of the Named Insured." Perhaps a better term for what evidently was intended by the use of this adjective would have been "the *particular* use." In Appleman on Automobile Liability Insurance, p. 110, the term "actual use" is said to be designed to defeat the minority view that, if permission to use the car is given by the insured, the permission need not cover the specific purpose for which the car is being driven at the time of the accident. In the recent case of *Haeuser v. Ætna Casualty & Surety Co.*, 185 So. (La. App.) 493, the phrase "actual use" was so interpreted, and was held to relieve the company from liability where permission had been given for a certain purpose but the driver of the car was proceeding on a distinct errand of his own when the accident occurred.

The court below was in error in refusing judgment for defendant. The testimony of both brothers shows clearly that the permission given by Benjamin to George was not for the general use of the car for the day, but for the use of the car to go to Washington. It was that trip only that was authorized, and when George had completed it and returned to Patuxent the permitted use was at an end. When he started thereafter on a new journey, covering a comparatively long distance, in an exactly opposite direction, and for a wholly different purpose, he was, as he himself stated, taking the car on his "own account" and without any authority either express or implied. The fact that he made both trips on the same day, and that Benjamin had not yet returned home and therefore could not have himself used the car in the interval, does not establish permission in face of the express language used by the brothers in the conversation in which Benjamin's consent was given.

Before the defense of the suit in Baltimore was entered upon, George Grove signed an agreement with defendant which recited that it was the insurance company's contention that his liability was not covered by the policy, but that, in order to avoid controversy until after plaintiff's right of action against him had been established, the company would defend the suit with the understanding that this was not to be construed as a waiver of its right to disclaim liability under the policy. Such an agreement is proper and effective for the purpose: *Orcutt v. The Erie Indemnity Co.*, 114 Pa. Superior Ct. 493, 499. Plaintiff claims that, since she was not a party to this agreement, as to her the principle should apply that when the insurer undertakes the defense of the tort action it becomes estopped thereafter to deny liability on the policy. If, however, plaintiff's rights against defendant be regarded as derived from the insured, her status can rise no higher than his. If, on the other hand, they be viewed as independently resting upon the policy itself, the clause granting such rights provides that a person who has secured a judgment against the insured "shall thereafter be entitled to recover under the terms of this policy *in the same manner and to the same extent as the Insured.*" Moreover, it is an essential element of estoppel that the person invoking it has been influenced by or has relied upon the representation or conduct of the person sought to be estopped. Whereas the insured loses substantial rights when he surrenders to his insurer the control of the litigation, plaintiff surrendered no rights and was in no way misled or damaged merely because it was the insurer who conducted the defense against her claim. When, therefore, such an agreement between the insured and the insurer is entered into as in the present case, the insurer does not, by defending the original suit, waive any rights or become estopped to repudiate liability in a subsequent action on the policy brought by the injured person: *Johnson v. A. Her-*

*mann, Jr.,* 101 Pa. Superior Ct. 198, 204, 205; *Ferguson v. Manufacturers' Casualty Insurance Company of Philadelphia,* 129 Pa. Superior Ct. 276, 282; *Myers v. Ocean Accident & Guarantee Corporation,* 99 Fed. (2d) 485, 494.

The judgment is reversed and is here entered for defendant.