# Exner, Appellant, v. Safeco Insurance Company of America.

474

Argued November 29, 1960.   Before JONES, C. J.,
BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused February 27, 1961.

*Joseph H. Foster,* with him *Martin H. Philip,* for appellants.

*W. Hamlin Neely,* with him *William E. Schantz,* for appellee.

OPINION BY MR. JUSTICE BOK, January 16, 1961:

In a former action in Carbon County plaintiffs got verdicts for damages against Jacoby, driver-son of the owner of the other car in an automobile collision. Plaintiffs also sued Gangewere, father-owner of the car as the son's superior, in Carbon County, and recovered the same amounts against him; a new trial was granted in which the damages were stipulated and only the father's liability for his son's conduct was tried. Again the plaintiffs won, and we affirmed the grant of a second new trial sub nomine *Exner v. Gangewere,* 397 Pa. 58 (1959), 152 A. 2d 458. Whether this retrial has been held we do not know.

The instant action was brought in Lehigh County against the father's insurance carrier to recover under the omnibus clause in the policy, the insurer having refused payment. The complaint is based on the original verdicts against Jacoby. The jury found for the plaintiffs, but the court below, on motion, entered judgment n.o.v. for the defendant. Plaintiffs appealed.

The case spins on the point of paternal permission to use the car, and since they won the verdicts the plaintiffs are entitled to the favorable facts and inferences.

The father, Gangewere, lived with his mentally incompetent wife in Allentown, Lehigh County. He also owned and maintained another home about four miles away, which he visited almost every day and where his

mistress lived with their several children, one of whom was Robert Jacoby, the driver in the accident. The day of the accident was Sunday, December 18th, and Gangewere arrived at the Jacoby house early. The jury might have inferred that he would have been happy to have the day there alone and that his son knew it.

Relations between father and son were good. The boy had a car of his own and the father did for him as well as he could; he expected, for example, to give him a present for waxing the car on the instant occasion. Jacoby had previously used his father's car, with permission, for several small commissions, such as twice taking his mother to market, polishing the car, making minor repairs, getting a newspaper for his father, and taking it to a nearby filling station to put on chains. On these errands he had not strayed beyond the geographical limits of the task in hand.

On this occasion he seemed to have an ulterior motive, for on the day before he laid the groundwork for waxing the car by arranging to meet a friend. On Sunday morning he told his father that he would wax the car and was told that the keys to it were in the pocket of his father's coat, which appeared to be hanging in a closet. Permission was given to wax and polish, and nothing was said about when or where to do it or about what else the son might or might not do.

At about one o'clock Jacoby called for his friend. As it was Sunday, the nearby filling station was closed. Jacoby knew a girl in the town of Jim Thorpe, thirty-seven miles away, and they drove past her house there, but not seeing her went on to a back road where they waxed and polished half the car. As it was then growing dark they drove past the girl's house again but again failed to see her and started back to Allentown. Halfway there the accident occurred.

Under these facts it was error to overturn the jury's verdict. The policy pertinently provides: "With re-

spect to insurance against liability under Insuring Agreement 1, for bodily injury, . . . the unqualified word 'insured' includes the named insured and his spouse if a resident of his household, and, . . . (1) any person while using an automobile owned by the named insured . . . and any person or organization legally responsible for the use of such owned or substitute automobile, provided the actual use is with the permission of the named insured . . ."

Plaintiff followed the procedure in *Waters v. New Amsterdam Casualty Co.*, 393 Pa. 247 (1958), 144 A. 2d 354, by proving the ownership of the car in Gangewere and its operation by Jacoby. This created a presumption of permission in Jacoby to drive and made a *prima facie* case. Defendant was then required to come forward with evidence, on pain of the plaintiff's being entitled to binding instructions, on the presumption plus proof of the judgment in his favor against Jacoby. It did so, and produced Gangewere as a witness, who denied permission in these words: "I gave him no permission to take the car anywhere but where it was designated to go, wash and wax the car, and not in Jim Thorpe or Palmerton. . . . I never told him not to leave Allentown."

Plaintiffs then put on Jacoby and his friend. Jacoby testified that his father gave him permission at about nine-thirty in the morning to wax and polish the car, told him where the keys were, did not restrict him where to go, and did not think to look for his son and car until six o'clock in the evening. This, with the relationship between father and son and the general background, was material for the jury to pass upon. There is very little disputed evidence, but even if the witnesses were in complete agreement and their evidence clear and indisputable, it was oral testimony and for the jury to pass upon: *Nanty-Glo Boro. v. American Surety Co.*, 309 Pa. 236 (1932), 163 A. 523;

*Todd v. Lit Brothers,* 381 Pa. 109 (1955), 112 A. 2d 810; *Agger v. Frank Donatelli & Co., Inc.,* 171 Pa. Superior Ct. 631 (1952), 91 A. 2d 303.

Much has been wrought in argument about presumptions and the duty of persuasion and risk of non-persuasion. These memorable ideas seem remote from the case, which involves only the fact and breadth of permission to drive under an insurance policy.

A subsidiary question is whether there was a substantial deviation when Jacoby tried to drive to and from a town thirty-seven miles away, and our attention is called to *Brower v. Employers Liability Assurance Co.,* 318 Pa. 440 (1935), 177 A. 826; *Laroche v. Farm Bureau Ins. Co.,* 335 Pa. 478 (1939), 7 A. 2d 361; and *Freshkorn v. Marietta,* 345 Pa. 416 (1942), 29 A. 2d 15. These cases do not bear. *Laroche* and *Freshkorn* involve specific geographical restrictions, and *Brower* involves a particular task which plaintiff far exceeded in order to do a job of his own. In the instant case Jacoby found the nearest filling station closed and then went on a rather long way, but he did then do a substantial part of the thing for which permission had been given him. We cannot say as a matter of law that he should have hunted other filling stations at slowly increasing distances from Allentown. The case was, rather, for the jury under all of the circumstances. Permission may be either express or implied: *Beatty v. Hoff,* 382 Pa. 173 (1955), 114 A. 2d 173.

Judgment reversed. The record is remanded with instructions to enter judgment on the verdicts.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES dissent.