PROVIDENT TRADESMENS BANK AND TRUST COMPANY, Administrator of the Estate of John R. Lynch, a/k/a John Robert Lynch, Deceased

and

John Landis Harris

and

Sarah B. Smith, Administratrix of the Estate of Thomas W. Smith, Deceased

v.

LUMBERMENS MUTUAL CASUALTY COMPANY

and

George M. Patterson, Administrator of the Estate of Donald Cionci, Deceased.

Civ. A. No. 26455.

United States District Court
E. D. Pennsylvania.

June 17, 1963.

Freedman, Landy & Lorry, by Avram G. Adler, and Bayard M. Graf, Philadelphia, Pa., for Provident Tradesmens Bank & Trust Co.

Herbert C. Nelson, Norristown, Pa., for John Landis Harris and Sarah B. Smith.

Swartz, Campbell & Henry, by Lynn L. Detweiler, Philadelphia, Pa., for Lumbermens Mut. Cas. Co.

Schroeder, Jenkins & Raymond, by R. Stuart Jenkins, Media, Pa., for George M. Patterson.

LUONGO, District Judge.

Defendant, Lumbermens Mutual Casualty Company (Lumbermens), has presented motions for new trial and for

judgment n. o. v. following an adverse verdict in this declaratory judgment proceeding under 28 U.S.C.A. § 2201. The action involved the question of coverage of a policy of insurance issued by Lumbermens to one Edward S. Dutcher, the named insured. In addition to Dutcher, the policy insured " * * * any person using such automobile, provided the actual use thereof is with the permission of the named insured." This action, resulting in directed verdicts in favor of two Estate plaintiffs (Provident Tradesmens Bank and Trust Company, Administrator of the Estate of John R. Lynch, and Sarah B. Smith, Administratrix of the Estate of Thomas W. Smith), and a verdict by the jury in favor of plaintiff John Landis Harris, against defendant Lumbermens, arose out of the following circumstances:

On January 17, 1958, John Lynch and Donald Cionci, driving the automobile of Edward Dutcher, picked up John Landis Harris in Media, Pennsylvania. On the way from Media to Bryn Mawr, the Dutcher vehicle, driven by Cionci, was involved in a collision with a truck operated by Thomas W. Smith. Lynch, Cionci and Smith were killed, Harris was injured.

As a result of the accident three trespass actions were commenced:

(a) Harris instituted suit in the Court of Common Pleas of Delaware County against Dutcher, the Lynch Estate and the Cionci Estate;

(b) The Smith Estate instituted suit in the Court of Common Pleas of Delaware County against the same defendants named in the Harris suit;

(c) The Lynch Estate commenced an action in this Court against the Cionci Estate.

When Lumbermens refused to defend the Cionci Estate in the action in this Court and to make available the coverage of the policy issued to Dutcher to satisfy any verdict or judgment in favor of the Lynch Estate, this declaratory judgment action was instituted by the Administrator of the Lynch Estate seeking a declaration that Cionci was driving with Dutch-

er's permission, that Cionci was, therefore, an insured under the policy in question, and that the policy is available to satisfy a verdict or judgment obtained by the Lynch Estate in its action against the Cionci Estate. Lumbermens joined, as an additional defendant, the Cionci Estate and, as additional plaintiffs, John Landis Harris and the Smith Estate. A subsequent motion by Lynch's Estate to sever Harris and the Smith Estate as plaintiffs was successfully resisted by Lumbermens.

■■ At the trial of the declaratory judgment action plaintiffs proved the existence of the insurance policy, Dutcher's ownership of the car and the fact (conceded at the trial by Lumbermens) that Cionci was the driver of the car. This was a diversity suit with all operative facts occurring in Pennsylvania, hence Pennsylvania law was applicable. Lind v. Schenley Industries, Inc., 278 F. 2d 79 (3rd Cir., 1960), cert. den. 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960). Under Pennsylvania law proof of the above facts raises a presumption that Cionci was driving with Dutcher's permission, and, in the absence of credible testimony to rebut the presumption, justifies the entry of a directed verdict in favor of the plaintiff. Exner v. Safeco Insurance Company of America, 402 Pa. 473, 167 A.2d 703 (1961); Waters v. New Amsterdam Casualty Company, 393 Pa. 247, 144 A.2d 354 (1958).

Lumbermens' defense was that Cionci's use deviated substantially from the permission granted by Dutcher, that he was therefore operating without permission and the coverage of the policy was not available to him. Lumbermens offered to prove by the testimony of Dutcher that he had given permission to Lynch and Cionci to drive to Ardmore, Pennsylvania, a point a mile or two from Bryn Mawr, to enable one of the two to pay a bill and to return without delay. Timely objection was made by the two Estate plaintiffs to the offer of Dutcher's testimony. Dutcher was ruled incompetent, under the Pennsylvania Dead Man's Act, to testify against the two Estates but he

was permitted to testify as to Harris. With Dutcher's testimony ruled out, there was no evidence, as to the two Estate plaintiffs, to rebut the presumption of permission and, on the authority of the Exner and Waters cases the jury was directed to return verdicts in favor of the Lynch Estate and the Smith Estate. Harris' case was submitted to the jury which returned a verdict in favor of Harris.

1. *Motion for a new trial as to the Lynch and Smith Estates:*

■ Dutcher's competency to testify against the two Estate plaintiffs is controlled by the Pennsylvania Dead Man's Act, 28 P.S. § 322 which in pertinent part provides:

> "Nor, where any party to a thing or contract in action is dead, * * * and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased * * *, be a competent witness to any matter occurring before the death of said party, * * *."

■ Competency of a witness is the rule in Pennsylvania and incompetency the exception. In re Hendrickson's Estate, 388 Pa. 39, 44, 130 A.2d 143 (1957). One of the exceptions is the disqualification of surviving parties to a transaction and any other person whose interest is adverse to the interest of a decedent. In re Hendrickson's Estate, supra, 388 Pa. at page 45, 130 A.2d at pages 146–147. The test of adversity expressed in In re Gaston's Estate, 361 Pa. 105, 109, 62 A.2d 904, 906 (1949) and reiterated in Commonwealth Trust Co., Admr. v. Szabo, 391 Pa. 272, 281, 282, 138 A.2d 85, 89 (1957), is as follows:

> "The true test of the interest of a witness is that he will either gain or lose, as the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent."

■ The issue is a simple one, whether Dutcher's interest in this case was such as to render him incompetent under the foregoing tests. Lumbermens seeks to equate "interest" with "money" and contends that, since Dutcher is not a party to these proceedings, he has nothing to gain or lose from the judgment entered in these proceedings. That is too narrow a view. The subject matter of this suit is the coverage of Lumbermens' policy issued to Dutcher. Depending upon the outcome of this trial, Dutcher may have the policy all to himself or he may have to share its coverage with the Cionci Estate, thereby extending the availability of the proceeds of the policy to satisfy verdicts and judgments in favor of the two Estate plaintiffs. Sharing the coverage of a policy of insurance with finite limits with another, and thereby making that policy available to claimants against that other person is immediately worth less than having the coverage of such policy available to Dutcher alone. By the outcome in the instant case, to the extent that the two Estate plaintiffs will have the proceeds of the policy available to them in their claims against Cionci's estate, Dutcher will lose a measure of protection. Conversely, to the extent that the proceeds of this policy are not available to the two Estate plaintiffs Dutcher will gain. I will not indulge, as Lumbermens would have me do, in speculation as to whether any of the plaintiffs have a real probability of recovery against Dutcher, or as to the size of the verdicts which may be rendered in favor of any of the plaintiffs against any of the defendants. It is sufficient for the purpose of determining adversity that it appears clearly that the measure of Dutcher's protection under this policy of insurance is dependent upon the outcome of this suit. That being so, Dutcher's interest in these pro-

ceedings is adverse to the interest of the two Estate plaintiffs, the parties who represent, on this record, the interests of the deceased persons in the matter in controversy.

Lumbermens' motion for new trial against the Estate of Lynch and the Estate of Smith is denied.

### (2) *Motions as to Harris:*

#### (a) *Motion for judgment n. o. v.:*

■ Lumbermens' motion for judgment n. o. v. was not preserved as required by Rule 50 and for that reason must be denied. Massaro v. United State Lines Company, 307 F.2d 299 (3rd Cir., 1962). Nevertheless I feel obliged to offer the following comments on the lack of merit of the motion.

■ Lumbermens relies on Waters v. New Amsterdam Cas. Co., 393 Pa. 247, 144 A.2d 354 (1958). That case does not support Lumbermens' position, instead it confirms in every respect the procedure employed in the trial of this case. The basic problem in Waters was burden of proof. The trial judge there had instructed the jury that where a person is driving a vehicle owned by another there is a presumption that the vehicle is being driven with the permission of the owner and the presumption shifts the burden to the defendant to prove by a preponderance of the evidence that the vehicle was being driven without permission. The Supreme Court of Pennsylvania set aside the verdict, and in awarding defendant a new trial, held that the burden of proof does not shift and the instructions on that point were erroneous.

In accord with the Supreme Court's holding in Waters, supra, the jury in the instant case was instructed that the plaintiff Harris had the burden of proving by a preponderance of evidence that Cionci was driving the automobile in question with Dutcher's permission.[1]

To satisfy his burden, Harris relied on the presumption of permission. Lumbermens called Harris and Dutcher to show that limited permission was granted and that Cionci had exceeded it. Harris testified that Cionci and Lynch, in the Dutcher automobile, picked him up at Media, Pennsylvania, late in the afternoon of the day in question. Dutcher testified on *direct* examination that: About 3 p. m. on January 17, 1958, while in a taproom in Bryn Mawr, Pennsylvania, he was approached by Cionci and Lynch who asked to borrow his car to go to Ardmore to pay a bill; Dutcher consented but asked them to hurry back because there were groceries in the car which he had to take home; the two said they would be back in one-half hour; nothing was said about Media and no general permission to use the car was given; Dutcher " * * * merely acceded to their request to go to Ardmore to pay a bill and return in a half hour or to make it as soon as they could." (N.T. 156).

On cross-examination, however, and by rebuttal witnesses, Dutcher's direct testimony was shaken in several material respects. He contradicted his statement that he was in a hurry to get home in a half hour by later admitting that he probably had a couple of hours to get home. Second, the motive for his "hurry

1. "You have to bear one other thing in mind: Whenever a plaintiff institutes a lawsuit, he has what we call the 'burden of proof.' He must satisfy you by a preponderance of the evidence of the validity of his claim.

"In this case, Mr. Harris, the plaintiff, has to satisfy you by a preponderance of the evidence that Mr. Cionci was driving this car with the permission of Mr. Dutcher. He wasn't present; consequently, he relies entirely upon the presumption in the law about which I charged you.

"That presumption is enough to carry the burden of proof, but only until such time as the defendant by any credible evidence eliminates that presumption by showing that there was no permission. Once the defendant has done that, the burden of proof, the obligation which the plaintiff has to satisfy you by a preponderance of the evidence, the plaintiff will no longer be able to carry it, because satisfying you by a preponderance of the evidence requires testimony which would convince you that the permission here is more likely so than not so." (N.T. 207-208)

to get home", i. e. to give his wife the groceries which were in the car, was challenged by testimony of other witnesses that there were no groceries in the car. Another fact brought out on cross-examination was that Dutcher in his discussions with officers investigating the accident never complained or mentioned that he had merely given Cionci and Lynch limited permission to use his car.

In addition to those contradictions, the jury could very properly have considered two other factors as bearing on Dutcher's credibility. One was Dutcher's interest in the outcome of this trial, his interest in retaining for his own protection the maximum amount of his automobile liability insurance coverage. The other was his manner and demeanor in testifying. He was not an impressive witness and his testimony was not such that I would, were it within my power to do so, direct the jury to believe it as a matter of law.

Testimony offered by a defendant to rebut the presumption of permission was discussed in extenso in Waters v. New Amsterdam Cas. Co., supra. There, 393 Pa. at page 253, 144 A.2d at page 357, the Supreme Court of Pennsylvania said:

> "The burden of persuasion on the issue of the permission of the driver of the automobile remains with the plaintiff. (Citations omitted) Therefore, when the defendant assumes his burden of going forward with the evidence on the issue of permission and presents evidence clearly indicating that no permission was granted so that a jury could not reasonably find otherwise, then if the plaintiff fails to produce evidence that permission had been granted, the court should direct a verdict for the defendant."

In applying that principle, the Court stated:

> "In the trial of the case defendant attempted to meet his obligation by adducing testimony that Koch did not have permission to use the Dreistadt automobile. Plaintiffs on the other hand, sought to shake the credibility of the defendant's witnesses through cross-examination and to elicit testimony from them that Koch did have permission. The court then properly permitted the case to go to the jury."

Referring to the factual situation before it, the Court said 393 Pa. at page 253, n. 5, 144 A.2d at page 357:

> "*The court may not direct a verdict for the defendant in such a case because the jury must have the opportunity to resolve the conflicts in the testimony of defendant's witnesses. * * *"* (Emphasis supplied.)

The above quoted language from Waters, particularly the latter portions, makes it abundantly clear that in the instant case defendant did not present "* * * evidence clearly indicating that no permission was granted so that a jury could not reasonably find otherwise * * *." The contradictions in Dutcher's testimony, his interest in the outcome of the case and his demeanor in testifying were factors which compelled submission of the issue to the jury. It would have been error to do otherwise.

Lumbermens contends, however, that its "concession" that permission was granted to go to Ardmore compels a verdict to be entered in its favor. But here Lumbermens "conceded" something which the plaintiff neither contended nor undertook to prove, consequently it was not a concession. Lumbermens cannot, therefore, substitute such a "concession" for the "credible evidence" which it was obligated to produce. Its "concession" was a matter of proof, and one which depended on Dutcher's oral testimony. The jury was entitled to disbelieve his testimony entirely, including the so called concession. Even if the jury regarded Dutcher as a credible witness, it was still for the jury to determine the scope of the oral permission which Dutcher gave. There was conflict, from Dutcher's testimony alone, as to precisely what was said and done. The scope of the permission depended upon which of Dutcher's con-

flicting statements the jury accepted, and further what was meant by what he said in dealing with Cionci and Lynch at the time they borrowed the car from him.

 Whether or not Dutcher was a credible witness was one matter; whether or not he gave credible testimony as to a limited permission to use his car was another. The determination of the second question depended upon the jury's reconciliation of the various contradictions in Dutcher's testimony and the weight they attached to his interest and manner of testifying. Following the dictates of Waters, supra, all of those questions were left to the jury under appropriate instructions.[2] It was the jury's function to determine what Dutcher meant to express by the words which it found were spoken when the car was loaned. McCormack v. Jermyn, 351 Pa. 161, 40 A.2d 477 (1945).[3]

(b) *Motion for New Trial*:

Lumbermens' motion for a new trial as to Harris has two aspects: (i) alleged errors in the charge to the jury; and (ii) an allegation that prejudice was created when the Court directed verdicts in favor of the Estate plaintiffs.

The contention based on alleged errors in the charge can be disposed of without extended discussion. The extracts from the charge quoted above (footnotes 1 and 2) conform to the requirements of Exner v. Safeco Ins. Co. of America, 402 Pa. 473, 167 A.2d 703 (1961) and Waters v. New Amsterdam Cas. Co., 393 Pa. 247, 144 A.2d 354 (1958). They substantially and adequately covered the points for

2. "First, if you do not believe Mr. Dutcher at all, if there is no credible testimony, Mr. Harris has the presumption operating in his favor and you would then have to conclude that Mr. Cionci was driving with Mr. Dutcher's permission.

"But if you determine that Mr. Dutcher is credible, believable, that the testimony which he gave is worthy of belief by you, then you must consider just precisely what it was that he said. What permission did he grant?

"There was testimony, as I recall, from Mr. Dutcher that Lynch and Cionci indicated they wanted to go to Ardmore, perhaps a mile or two away from Bryn Mawr, to pay a bill, or something to that effect. It is for you to determine and to recall precisely what the testimony was.

"If Mr. Dutcher gave permission only to go to Ardmore and return, and Cionci drove to Media, I think that we would all agree that, when you look at this map, that goes beyond what you would call a minor deviation from the permission, because of the distance that is involved.

"There is also a possibility that Mr. Dutcher's permission was limited in space, destination and return being Ardmore, as he testified at one point, or possibly it was limited as to time. As I recall, he indicated he provided that they would be back in a half hour. Then there was some other questioning of him which seemed to indicate that perhaps a couple of hours might have been involved. But this is all for you to recall precisely what the testimony was.

"The thing that you must consider is whether Mr. Dutcher's testimony is credible and, if you determine that it is credible, you will have to interpret precisely what permission he gave to Cionci to drive this car and whether that permission was exceeded. If the permission was exceeded, then you must find in favor of the defendant." (N.T. 204–205)

* * *

"It all depends on whether you are going to believe Mr. Dutcher and, if you believe Mr. Dutcher, precisely what permission did he give? If you get to the point where you believe that he gave a limited permission, and that the limited permission was exceeded, then you must return a verdict in favor of the defendant." (N.T. 208)

3. Mr. Justice Stern, in McCormack v. Jermyn, in speaking of the function of the court and jury in contract cases made the following statement, 351 Pa. at page 165, 40 A.2d at page 479, which is relevant here:

"The rule however is undoubted, that the meaning of words used in conversation, *and what the parties intended to express by them*, is exclusively for the jury to determine. * * * "*The sense of words used in connection with what the parties intended to express by them* is exclusively for the jury to determine. The judge may not put a legal interpretation on oral words, and make it a matter of positive direction. It is the province of the court to expound the meaning of an instrument, but not of words uttered of which there can be no tenor."

charge submitted by defendant Lumbermens.

The other issue stems from Lumbermens' allegation that it was prejudiced in its case against Harris by the fact that verdicts were directed in favor of the two Estates. Professor Moore has stated in 5 Moores Federal Practice ¶50:02, n. 7 that: "Where no evidence is adduced to disprove the prima facie case of the plaintiff and his evidence stands uncontradicted and unimpeached, the court should direct [a verdict]." This is precisely what was done in the instant case. Lumbermens' contention, in essence, is that a verdict may never be directed in multiple party litigation without creating prejudicial error. I know of no such rule. The well established practice is directly to the contrary. In the instant case the court made it clear beyond question to the jury that while Dutcher was incompetent to testify against the two Estates, he was a competent witness against Harris. The jury was also instructed that Harris as plaintiff had the burden of proof on the issue of permission. These instructions were sufficient to protect Lumbermens' interests in the Harris case. I must assume, in the absence of evidence to the contrary, that the jury followed those instructions. There is nothing to indicate that it did not.

Apart from the lack of substance to the allegation of prejudice, Lumbermens itself was responsible for the very state of the record of which it now complains. After having joined the additional plaintiffs and defendant, it vigorously and successfully contested the motion of the Lynch Estate to sever those additional parties. Moreover, Lumbermens rejected a number of suggestions designed to avoid this very situation, including one suggestion that the issue be submitted to the jury as to all plaintiffs with the proviso that Estate plaintiffs be given full opportunity to cross-examine without thereby waiving their position as to incompetence under the Dead Man's Act. Lumbermens created the multiple party situation and rejected all efforts to eliminate the problems caused by the joinder. It cannot be heard now to complain of prejudice.

Lumbermens' motion for a new trial against Harris is denied.