Gwendolyn HALL, Travelers Indemnity Company

v.

Wayne WILKERSON, Susan Kilmer, Richard Schoch.

Susan Kilmer and Richard Schoch, Appellants.

No. 90–5048.

United States Court of Appeals, Third Circuit.

Argued June 25, 1990.

Decided Feb. 25, 1991.

See also 742 F.Supp. 192.

---

**312**

Salvatore P.J. Vito (argued), Strouds-burg, Pa., for appellants.

Patrick E. Dougherty, Joseph J. Heston (argued), Kingston, Pa., for appellees.

Before SLOVITER, Chief Judge, MANSMANN, Circuit Judge, and FULLAM, District Judge.*

## OPINION OF THE COURT

SLOVITER, Chief Judge.

Appellants Wayne Wilkerson, Susan Kilmer and Richard Schoch appeal from the district court's order denying Wilkerson's post-trial motions and declaring that Wayne Wilkerson is not an insured under the terms and conditions of the automobile liability policy issued by appellee Travelers Insurance Company to appellee Gwendolyn Hall.

### I.

*Facts and Procedural History*

On May 16, 1987, Wayne Wilkerson was involved in a serious one-vehicle automobile accident in Stroudsburg, Pennsylvania while he was operating a vehicle owned by appellee Gwendolyn Hall. Susan Kilmer and Richard Schoch were both passengers in that vehicle and were seriously injured as a result of the accident.

At the time of the accident Wilkerson was residing at Hall's home in Effort, Pennsylvania along with Hall's son, Leo Yuspeh, who was Wayne Wilkerson's step-father for the period he was married to Wilkerson's mother. In March of 1987, prior to leaving for France for an extended period of time pursuant to a research fellowship, Hall granted Wilkerson permission

---

* Hon. John P. Fullam, United States Senior District Judge for the Eastern District of Pennsylvania sitting by designation.

both to remain at her home in Effort and to operate her vehicle under certain prescribed conditions. The vehicle in question was insured under two insurance policies issued by Travelers, a general liability policy and a general umbrella policy. The general liability policy at issue on appeal provides, in pertinent part, as follows:

WHO IS AN INSURED

For YOUR car—YOU, any RELATIVE, and anyone else using YOUR CAR if the use is (or is reasonably believed to be) with YOUR PERMISSION, are INSUREDS....

App. at 8.

In February, 1988, Hall and Travelers filed a declaratory judgment action in the United States District Court for the Middle District of Pennsylvania against Wilkerson, Kilmer and Schoch requesting that the court determine that, at the time of the accident, Wilkerson was not an "insured" under the terms of the liability policy covering Hall's vehicle. In January, 1989, Kilmer and Schoch filed two separate actions in the same court. One was in tort against Wilkerson and Hall seeking damages for personal injuries sustained during the accident; the second was a declaratory judgment action requesting the court to determine whether Wilkerson was an "insured" under Hall's policy at the time of the accident. The three actions were consolidated and a hearing was held before Chief Judge Conaboy on April 26, 1989. At that hearing the court heard testimony of several witnesses, and depositions and other evidence were submitted to the court.

Hall testified that she had informed Wilkerson that there were to be no drugs in the car. She further instructed him: "[a]lcohol is a drug like any other drug. No driving under the influence of mind altering drugs, including alcohol." App. at 23. Wilkerson testified that he could not remember if alcohol was specifically mentioned along with drugs, but that it was his understanding that Hall's definition of drugs included alcohol. App. at 31. The relevant question and answer were:

Q. When you had the conversation with Gwendolyn and she said, don't drive and do drugs, was it your understanding that within her definition of drugs, she included alcohol?

A. I would have to say, yes.

The district court found that Wilkerson was not an "insured" under Hall's policy because his consumption of alcohol on the evening of the accident was a violation of the limited permission to use the vehicle that was given to him by Hall. The district court reasoned that under Pennsylvania law coverage will be extended under a permissive use clause if the driver's deviation from the named insured's permission is slight and inconsequential, but coverage is not extended if that deviation is substantial. The court concluded that Wilkerson's use of alcohol was a substantial deviation from the very specific and limited conditions under which Hall allowed him to operate her vehicle.

Wilkerson filed a post trial motion to amend the judgment under Federal Rule of Civil Procedure 59 or in the alternative for a new trial. This was denied by the district court and this appeal followed.

## II.

### Jurisdiction

We must first consider the question of our appellate jurisdiction. Because the judgment appealed from was entered in only two of the three cases that were consolidated in the district court, the question arises whether we are presented with a final order under 28 U.S.C. § 1291. At the time of this appeal, the third case, Kilmer and Schoch's tort action against Hall and Wilkerson, was set for trial several months in the future. At oral argument, this court asked counsel to ascertain whether the district court would certify the appeal under Fed.R.Civ.P. 54(b), so that it would not be necessary for us to reach the issue of the effect of the consolidation on our jurisdiction. The district court declined to certify the judgment as final, reasoning that the liability of Hall and Wilkerson to the tort

plaintiffs remained open.[1] Thus we must determine our jurisdiction in the face of the consolidation.

In *Bergman v. City of Atlantic City,* 860 F.2d 560, 566 (3d Cir.1988), we held, in the face of a circuit split on the issue, that we would apply a case-by-case approach to the appealability of an order finally disposing of less than all consolidated cases. We noted that we had considered a similar issue in *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434 (3d Cir.1977), where we held that a Rule 54(b) certification was sufficient to give this court jurisdiction over an order granting summary judgment for some but not all defendants in one of two consolidated actions. Nonetheless, we held in *Bergman* that appeal from the summary judgment order on behalf of the defendants in one of two consolidated actions was not final for the purposes of section 1291, primarily because the actions had been consolidated for all purposes of discovery and trial.

Among the criteria we considered in deciding whether the orders in *Bergman* and *Bogosian* were appealable were whether the cases were in the same forum with the same judge; whether the complaints and defendants were identical; whether plaintiffs had the same counsel in both actions; and, as noted, whether the cases were consolidated for trial or simply for pre-trial administration.

Both *Bogosian* and *Bergman* found the latter consideration dispositive. In *Bogosian,* we emphasized that the two cases had not been consolidated for trial, whereas in *Bergman,* they were. Moreover, in *Bergman* both the complaints were "substantially similar" in the two actions.

■ The consolidation order in this case consolidated two declaratory judgment actions directed to the coverage issue with an action based on the underlying tort claim. It is evident that the claims are not the same. The declaratory judgment actions sought to resolve the question whether Wilkerson was an insured under Hall's policy with Travelers, while the tort action will determine the extent of Wilkerson's liability to Kilmer and Schoch. The parties are not identical. Travelers, a plaintiff in one declaratory action, was not even a party to the tort action.

Most significant, it is unlikely that the actions could have been tried together. Even if there had been a triable issue of fact as to the extent of Hall's permission to Wilkerson with respect to the use of the vehicle, trial of the insurance coverage issue before the same jury deciding the extent of Wilkerson's negligence would have introduced impermissibly the issue of insurance into the tort action. Indeed, it is not unusual to have the underlying tort action pending in state court while the coverage issue remains in federal court, thereby rendering consolidation impossible.

Under these circumstances, we hold that the order disposing of the declaratory judgment issue, the order for which the appellants seek review, is a final order for the purposes of section 1291. Therefore, we have jurisdiction to hear the appeal.

### III.

### *Standard of Review*

■ The question of whether or not Wilkerson was an "insured" under the policy at issue is a mixed question of law and fact. *Federal Kemper Ins. Co. v. Neary,* 366 Pa.Super. 135, 139–40, 530 A.2d 929 (1987). We must apply a clearly erroneous standard to the factual component and a plenary standard to the legal component. *Ram Constr. Co., Inc. v. American States Ins. Co.,* 749 F.2d 1049, 1053 (3d Cir.1984).

■ The precise bounds of the permission given by Hall to Wilkerson and whether or not Wilkerson's use of her vehicle on the night of the accident exceeded those

---

**1.** Subsequent to the district court's decision on the Rule 54(b) motion, summary judgment was entered in favor of defendant Hall in the tort action, and a default judgment was entered against Wilkerson. Since the outstanding issue tort liability was a key reason for the district court's refusal to certify the appeal, we note that, at this time, the district court itself might well agree that this appeal warrants certification. In light of our decision, we see no reason to remand once again for that purpose.

bounds are questions of fact to be determined by the factfinder, in this case the trial court after it has heard the witnesses, weighed the evidence and drawn permissible inferences. These findings will be set aside only if this court determines that they were clearly erroneous. In applying that standard, an appellate court may not substitute its own findings for that of the district court; a reviewing court may only assess whether or not there is enough evidence to support the lower court's findings. *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 650 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990). However, the question whether a Pennsylvania court would find this particular type of deviation to be such a "substantial deviation" that Wilkerson would not be an "insured" under the policy is a question of law over which this court has plenary review. *Dent v. Cunningham,* 786 F.2d 173, 175 (3d Cir.1986).

## IV.

### *Discussion*

The thrust of appellants' argument for reversal is that the trial court failed to reconcile ambiguities and inconsistencies in the testimony of both Hall and Wilkerson. We have examined the record and conclude there was ample evidence to support the court's finding that Hall's permission to use Hall's automobile was specifically circumscribed by the admonition "not to use alcohol or drugs when he was driving the vehicle." App. at 13. Certainly, the district court's finding is not clearly erroneous.

We turn next to the question of whether this condition of permission was actually violated. This also is a question of fact to be determined by the trial court and subject to reversal only if clearly erroneous. Wilkerson admitted to having consumed a large quantity of beer on the evening of the accident, App. at 31–32, and he also admitted he knew it was improper to drink and drive, App. at 33. Thus, the record supports the district court's finding that "Wilkerson was driving Hall's car at a time when he continued to consume alcohol." App. at 15.

The parties do not dispute that Pennsylvania law governs the issues in this case. The district court properly stated the rule to be applied. Under clearly established Pennsylvania law, when this type of permissive use clause is at issue and it is determined that the driver deviated from the scope of the permission, coverage will be extended to the driver if the deviation from the named insured's permission is slight and inconsequential, but not if it is substantial. *Freshkorn v. Marietta,* 345 Pa. 416, 29 A.2d 15 (1942); *General Accident Ins. Co. v. Margerum,* 375 Pa.Super. 361, 544 A.2d 512 (1988).

The district court's conclusion that Wilkerson's driving of Hall's vehicle in violation of her no-alcohol restriction was a substantial deviation from her permission is consistent with Pennsylvania law. In *Federal Kemper Ins. Co. v. Neary,* 366 Pa.Super. 135, 530 A.2d 929 (1987), the named insured had given permission to his stepson to use his automobile under the condition that only the stepson was to drive the vehicle unless an emergency arose, and that under no circumstances was an unlicensed driver allowed to operate the vehicle. The stepson allowed an unlicensed driver to operate the vehicle and an accident occurred. The court ruled that because the stepson violated specific restrictions placed on the use of the vehicle by the named insured, there was no coverage under the insurance policy's permissive use clause.

Even more instructive than *Neary* is *General Accident Ins. Co. v. Margerum,* 375 Pa.Super. 361, 544 A.2d 512 (1988). In *Margerum,* the Pennsylvania Superior Court ruled that a driver's violation of an express restriction of the automobile owner not to drink and drive was a substantial deviation from the owner's permission to operate the vehicle, and therefore the driver was not an "insured" under the owner's policy. The appellants argue that *Margerum* is distinguishable because in that case, unlike this one, there was no question of fact raised as to the exact nature of the restriction or as to its violation. The dis-

tinction is unavailing because we look to that case for the legal principle. In cases under Pennsylvania law, once the factfinder determines that there was a no-alcohol restriction placed on the use of the vehicle and that restriction was violated, the legal principle applied in *Margerum* governs. This is a diversity case and we are bound by Pennsylvania's construction of the law, even though its application may appear harsh in certain cases.

Nothing in *State Farm Mutual Automobile Ins. Co. v. Moore,* 375 Pa.Super. 470, 544 A.2d 1017 (1988), *alloc. denied,* 521 Pa. 622, 557 A.2d 725 (1989), derogates from the *Margerum* opinion's applicability here. In *Moore,* the court interpreted an omnibus clause that excluded liability coverage "[f]or any person using a vehicle without a reasonable belief that the person is entitled to do so." A jury held that an unlicensed driver who was driving with the primary user's permission was covered under the policy. The verdict was upheld on the ground that the term "entitled" was ambiguous, and that the driver could have reasonably believed that he was entitled to use the car once he had permission of the owner or lawful possessor. *Id.* 544 A.2d at 1020. We note that there was no evidence that the driver's permission to use the car was conditioned on his possession of a license. Thus *Moore* is irrelevant here where Wilkerson's permission to use the car was circumscribed by the condition Hall imposed. This case is controlled by *Margerum,* not *Moore.*

We are not insensitive to the policy concerns forcefully expressed by the dissent. However, we are not free in diversity cases to apply our own notion of policy, but must predict that which is likely to be accepted by the Pennsylvania Supreme Court. The dissent suggests that that court will not accept the holding of the only Pennsylvania appellate court to speak to the issue. We are not convinced that the Superior Court's *Margerum* decision is so far out of the mainstream of state law that it will be rejected by the Supreme Court.

■ Appellants have also raised before this court the propriety of the district court's admission of a blood alcohol test as evidence of Wilkerson's condition at the time of the accident. Wilkerson's own admissions show that he violated the condition of his permission to use the vehicle. They also argue that because the test results showed a blood alcohol level only scantly over that of legal intoxication, Wilkerson's drinking was only a slight deviation from the permission granted by Hall. The only relevant issues were whether Wilkerson violated the specific permission given and whether that deviation was properly characterized as substantial. Any evidence contained in the blood alcohol test concerning his degree of intoxication is irrelevant and, *a fortiori,* any error by the district court in this matter is harmless.

## V.

### *Conclusion*

For the reasons set forth, we will affirm the judgment of the district court.

FULLAM, Senior District Judge, dissenting.

I respectfully dissent. The decision of the majority in this case is tantamount to ruling that, under Pennsylvania law, persons injured by drunken drivers have no recourse to liability insurance proceeds unless the culpable driver was the owner of the vehicle or a member of the owner's family. For it is no doubt a condition of every loan of an automobile—whether made explicit, or merely implied—that the lender does not wish the borrower to drive it while intoxicated.

Our task in this diversity case is to predict how the Pennsylvania Supreme Court would resolve the legal issues presented. Decisions of the Pennsylvania Superior Court, an intermediate appellate court, may provide persuasive guidance, but are not controlling. I believe the majority has accorded an unduly broad scope to certain language in a single, anomalous, decision of the Superior Court, and has unfortunately reached a result which is contrary to decisions of the Pennsylvania Supreme Court and all other decisions of the Penn-

sylvania Superior Court. More important, the decision overlooks recent changes in Pennsylvania law which have been wrought by the Pennsylvania Legislature.

Whether the Travelers liability insurance policy provided coverage to Wayne Wilkerson at the time of the accident is determined by the proper interpretation of the policy language, in the context in which the policy was issued. In reviewing the developing Pennsylvania law in this area, it is important to keep in mind significant differences in policy language. What a court decides when the policy provides coverage only when "the *actual* use is with the permission of the named insured" should not automatically be assumed to apply equally when, as in this case, the policy provides that an "insured" includes "you, any relative, and anyone else using your car if the use is (or is reasonably believed to be) with your permission."

The Pennsylvania Supreme Court's first in-depth analysis of omnibus and extended coverage clauses in liability insurance policies occurred when such clauses, and indeed liability insurance itself, were a relatively new phenomenon. In *Brower v. Employers' Liability Assurance Co.,* 318 Pa. 440, 177 A. 826 (1935), the court, speaking through Mr. Justice Kephart, explained:

"The chief difficulty encountered by the various courts which have considered clauses substantially similar to the one in question relates to the scope to be given the word 'permission' contained in the clause. One class takes the position that an indemnity or liability insurance policy is intended to protect any person injured by the legitimate operation of the car regardless of how or where the accident took place and regardless of whether the operator of the car was, at the time of the accident, using it for the restricted purpose for which it had been delivered to him in the first instance. In the view of these authorities, a deviation, material or otherwise, from the terms of the bailment does not place the operator beyond the protection of the policy; 'permission' is construed as applying solely to the bailee's right to the possession of the car in the first instance and is not limited by any restrictions or conditions the owner may impose on the use of the car ...

"*This construction of the policy is in accord with the purpose of the various statutes adopted by several states requiring owners of automobiles to carry indemnity insurance* ...

"Another line of authorities places a restricted construction on such omnibus clauses in indemnity policies and confines liability thereunder to such accidents as occur while the car is being used for the specific purpose for which permission to operate the car was granted; if there is a material deviation by the operator from the purpose or terms of the bailment, the insurance company is not liable to an injured party ... In these cases, the fact that the driver has possession of the car under a color of authority seems to be lost sight of in determining the meaning of the word 'permission' as used in the omnibus clause; the controversies hinging about where 'permission' in the sense of specific authority, stops, and 'unauthorized use' steps in, so as to relieve the insurance carrier from liability" (emphasis added). *Id.* pp. 444, 445–46, 177 A. at pp. 828–29.

In that case, the car had been delivered to a part-time mechanic for the purpose of determining the cause of certain rattling sounds that had recently developed. While this conferred permission for the mechanic to test-drive the car, the court held, it did not grant him permission to drive a group of friends to a social event, late at night, 60 miles away. The court thus aligned Pennsylvania with the "substantial deviation" states. It is this "substantial deviation" rule which the majority purports to apply in the present case.

There are, however, two important points to be observed: (1) the *Brower* court explicitly recognized that the "substantial deviation" rule would be inappropriate if Pennsylvania had enacted legislation requiring vehicle owners to maintain liability insurance; and (2) the ruling was carefully limited to deviations concerning the time, place and purpose of the trip, rather than the manner of operation. There is, in

short, no suggestion that merely by stating, or implying, "Don't drive while drunk" or "Don't drive into a tree", the owner could enable the insurance carrier to deny coverage if the driver deviated from these instructions.

Subsequent decisions of the Pennsylvania Supreme Court are in accord with this view. *LaRoche v. Farm Bureau Mutual Auto Ins. Co.*, 335 Pa. 478, 482, 7 A.2d 361, 362 (1939) (permission limited to a specific journey); *Volk v. Cacchione*, 395 Pa. 636, 150 A.2d 849 (1959) (son had permission to drive car to his prom but not to allow others to drive it; friend to whom son gave the keys did not have owner's permission to drive 45 miles to a night club while son returned home with someone else).

Even under an "actual use" limitation in the policy, however, some deviation from limited permission is acceptable. In *Exner v. Safeco Ins. Co.*, 402 Pa. 473, 167 A.2d 703 (1961), for example, a young man who was authorized to take the owner's car out to be waxed, instead drove with a friend to another town 15 miles away to see if a certain young lady was at home. The trip lasted much longer than the owner had anticipated, but the occupants of the car did manage to wax half of the car in the course of the afternoon and evening, before the accident occurred. It was held that the insurance policy covered the operator, since the "actual use" was with the permission of the owner.

My review of the reported Pennsylvania decisions does not disclose a single case in which the Pennsylvania Supreme Court has held that a "substantial deviation" can result from improper *manner of operation* of the vehicle, as distinguished from not having permission to use the car for that particular trip, or at that particular time or location, or for that particular purpose.

In our case, there can be no doubt that Wayne Wilkerson had general permission to use Ms. Hall's vehicle, without regard to time, place, purpose or occasion: Ms. Hall was on a sabbatical in Europe, had been driven to the airport by Wayne Wilkerson, and had granted him permission to use her car while she was away. Both sides agree

that, because of her son's mental problems and the medications he was taking, Ms. Hall was very concerned that he not be exposed to drugs, and emphatically cautioned Wayne on that subject. Ms. Hall testified at trial (but not at her deposition) that she also expressly instructed Wayne not to drive while drinking; Wayne disputes this, but concedes, at least in retrospect, that Ms. Hall intended to include alcohol within her proscription of "drugs". The case was tried in the district court as if this dispute were crucial. In my view, both kinds of limitation would normally be implicit in any loan of an automobile—at least in the absence of evidence that the parties contemplated drunken driving by the bailee, an admittedly unlikely proposition.

But I am not persuaded that the Pennsylvania Supreme Court would deny insurance coverage in these circumstances; Wayne Wilkerson was clearly within the definition of an "insured" under the language of *this* policy ("anyone else using your car if the use is (or is reasonably believed to be) with your permission"). He had blanket permission to use the car; the fact that he operated it in a liability-producing manner on this particular occasion does not negate the grant of general authority.

There is only one Pennsylvania appellate decision to the effect that departing from the owner's instructions concerning the *manner of operation* vitiates insurance coverage, the case of *General Accident Ins. Co. v. Margerum*, 375 Pa.Super. 361, 544 A.2d 512 (1988), which the majority views as squarely controlling in the present case. I concede that in that case a panel of the Superior Court expressed the view that operating the vehicle while intoxicated, in violation of strict instructions from the owner to the contrary, constituted such a "substantial deviation" as to render the use of the vehicle unauthorized.

The facts of the *Margerum* case are distinguishable from the present case. In *Margerum*, an employer had made a vehicle available to a new employee who had no other means of travel to and from work. After two weeks on the job pursuant to this arrangement, the young man asked for

time off so that he might attend a wedding in a nearby town. The employer granted the requested time off, but with the express understanding that the employee was not permitted to use the employer's vehicle to attend the wedding, or while drinking. The employee attended the wedding reception, continued to imbibe thereafter, and became intoxicated. After returning to his parents' home from the wedding reception, he drove the employer's van to his girl friend's house, where he planned to spend the night and proceed directly to his place of employment the following morning. The (fatal) accident occurred en route to his fiancee's house. The Superior Court panel ruled that, although the trip from his parents' house to his girl friend's house could be regarded as within the "to and from work" restriction—*i.e.*, that the geographical deviation was not substantial—the fact that the employee was intoxicated did vitiate the employer's grant of permission to use the vehicle.

It is important to note that the initial grant of permission in the *Margerum* case was strictly limited, and that the employer's instructions concerning the day of the wedding virtually amounted to a prohibition against any use of the vehicle at all on that day, given the likelihood that the employee would be drinking.

Just six days after the *Margerum* decision was rendered, another panel of the Pennsylvania Superior Court decided *State Farm Mutual Auto Ins. Co. v. Moore*, 375 Pa.Super. 470, 544 A.2d 1017 (1988), *allocatur denied*, 521 Pa. 622, 557 A.2d 725 (1989), in which the court upheld a jury finding that an *unlicensed* driver who was permitted to operate the car by the teenage daughter of the owner, was entitled to liability coverage under the owner's insurance policy, which expressly excluded coverage for "any person using a vehicle without a reasonable belief that the person is entitled to do so".

If an unlicensed driver who knows that the owner is unaware that he is operating the car can entertain "a reasonable belief that [he] is entitled to do," surely Wayne Wilkerson, who had been granted blanket permission to use the car during the owner's absence in Europe, and whose consumption of alcoholic beverages barely sufficed to trigger a presumption of impairment, could reasonably believe that he was entitled to do so as well. Among the striking features of this case is the fact that, thus far, no one has even addressed the correct factual question. Even if the majority's interpretation of Pennsylvania law were correct, under the language of the policy in this case the issue is not whether, from Ms. Hall's perspective, Wayne Wilkerson had her permission to use the car on this occasion; the issue is whether Wayne Wilkerson reasonably believed that he had her permission. There is no testimony on that precise subject; and, needless to say, the district court made no findings in that respect. Thus, under any view of the matter, this case should be remanded for resolution of that factual issue.

But I am of the view that, as a matter of law, Wayne Wilkerson was an insured under the terms of the Travelers policy. I reach that conclusion because I am convinced that the Supreme Court of Pennsylvania would not adopt the Superior Court's anomalous extension of the "substantial deviation" doctrine as expressed in the *Margerum* case, but would instead follow its own decisions, and other decisions of the Superior Court, which imply that the manner of operation can never be a basis for concluding that use of the vehicle is unauthorized. This conclusion is reinforced—indeed, in my view, made inevitable—by the fact that the Pennsylvania Legislature has, in recent years, clearly evinced an intent that this result obtain.

Pennsylvania now requires, as a condition of registering a motor vehicle in this Commonwealth, owners to certify that they maintain the requisite level of liability insurance; and provides significant penalties, including loss of registration and operating privileges, for failure to maintain such insurance. 75 Pa. C.S.A. §§ 1781–1785 (Interestingly enough, owners who fail to maintain the requisite liability coverage are expressly precluded from recovering first-party benefits (*i.e.*, medical benefits, income-loss benefits, etc.) (§ 1714), but such

benefits may not be denied "solely because the driver of the insured motor vehicle is determined to be under the influence of drugs or intoxicating beverages at the time of the accident for which benefits are sought", § 1724(a)).

Particularly pertinent to my disagreement with the majority in this case is § 1724(b):

"Provisions of an insurance policy which exclude insurance benefits if the insured causes a vehicular accident while under the influence of drugs or intoxicating beverages at the time of the accident are void."

In *Donegal Mutual Ins. Co. v. Long*, 387 Pa.Super. 574, 564 A.2d 937 (1989), *allocatur denied*, —— Pa. ——, 582 A.2d 323 (1990), the court held that this statute invalidates provisions in insurance policies issued pursuant to car-rental agreements, denying liability insurance coverage to persons operating the vehicle while intoxicated. Moreover, although the statute did not become effective until July 1, 1986, the court relied in part upon the enactment of the statute to invalidate, as contrary to public policy, a similar provision in an insurance policy which predated the statute, with respect to an accident which occurred before the effective date of the statute.

Noting that the purpose of the motor vehicle responsibility law is "to require owners of registered vehicles to be financially responsible" (citing cases), the court stated:

"The clause in the rental agreement which excludes coverage for liability arising from the operation of the vehicle while under the influence of drugs or alcohol is inimical to this purpose ... The public policy enunciated by the Motor Vehicle Financial Responsibility Law, pursuant to its 1985 provisions, is to foster financial responsibility for damages caused to individuals on the roadways, not to promote uninsurance." (387 Pa. Super. at pp. 586, 587, 564 A.2d at pp. 943, 944).

Although earlier Superior Court decisions were arguably to the contrary the court declined to follow its earlier precedent, stating:

"The public policy considerations which we must heed in this appeal are grounded in the Motor Vehicle Responsibility Law governing the financial responsibility of owners of motor vehicles. [The public policy considerations relevant to the earlier cases] while perhaps related, are clearly distinguishable from the very basic consideration raised by the issue before us: that owners of licensed vehicles in this Commonwealth must maintain a financial responsibility so that victims of motor vehicle accidents will have recourse. That responsibility cannot be curtailed by a clause in a rental agreement denying coverage when liability arises when the driver is under the influence of alcohol or drugs. The public policy of this Commonwealth on this matter, as clear in 1985 as it is today, most definitely outweighs the enforcement of the exclusion clause." *Id.*, p. 591, 564 A.2d at 946.

I recognize that it could perhaps be argued that § 1724(b) addresses only denial of first-party benefits; on the other hand, the statutory language is very broad, and the Superior Court's construction of the language as including liability coverage in the *Donegal* case is persuasive. Moreover, the public policy inferences for the present case are equally strong under either construction of the statute. At the very least, the *Donegal* decision calls into question the continued validity of the *Margerum* case relied upon by the majority.

As Pennsylvania law now stands, at least in the view of the Pennsylvania Superior Court, it would be contrary public policy for the owner of a motor vehicle to withhold liability coverage for the operator for accidents caused by the operator's intoxication. If that result cannot be achieved by express language in the policy of insurance, surely it cannot be achieved by oral instructions to the driver.

The judgment appealed from should be reversed.