556 A.2d 488

Shannopin Mining Company, Petitioner *v.* Commonwealth of Pennsylvania, Department of Labor & Industry, State Workmen's Insurance Fund, Respondent.

Argued November 1, 1988, before President Judge CRUMLISH, JR., Judge MCGINLEY, and Senior Judge NARICK, sitting as a panel of three.

*William M. Wycoff*, with him, *Diana L. Reed*, and *J. Frank McKenna, III, Thorp, Reed & Armstrong*, for petitioner.

*Frederick H. Hobbs*, with him, *Thomas P. Kennedy*, Deputy Chief Counsel, State Workmen's Insurance Fund, for respondent.

OPINION BY JUDGE MCGINLEY, March 23, 1989:

Shannopin Mining Company (Shannopin) appeals from the decision of the Board of Claims finding in favor of the State Workmen's Insurance Fund (Fund).[1]

Shannopin commenced this action in this Court seeking coverage of certain claims pursuant to a policy of insurance which was issued to Shannopin by the Fund. This Court transferred the matter to the Board of Claims.

---

[1] The Fund was created pursuant to Section 3 of The Pennsylvania Workmen's Compensation Act (Act), the Act of June 2, 1915, P.L. 762, *as amended*, 77 P.S. §221.

The Board of Claims found in favor of the Fund and against Shannopin. Shannopin filed this appeal.

Shannopin is a Pennsylvania corporation formed in approximately May 1980 for the purpose of mining bituminous coal. In or about June of 1980, Shannopin purchased mining operations from J & L Steel Corporation (J & L). Pursuant to the purchase agreement between Shannopin and J & L, Shannopin agreed to assume liability for state and federal occupational disease claims filed after the closing date of the transaction by employees who had worked the mine for J & L and who subsequently would be employed by Shannopin.[2]

Shannopin was required by state law to obtain workers' compensation insurance.[3] Shannopin and the Fund entered into an insurance contract for a period from June 1, 1980, to June 1, 1981, whereby the Fund agreed to provide Workmen's Compensation Insurance for Shannopin, including Federal Black Lung coverage. Shannopin paid $1,486,359.87 for Pennsylvania Occupational Disease and Federal Black Lung coverage.

Subsection I of the policy is divided into two sections, "Coverage A—Workmen's Compensation" and "Coverage B—Employers' Liability." Under Coverage A, which is the subject of this litigation, the Fund agreed to pay *all compensation and other benefits required of the insured by the workmen's compensation law.*[4] (Emphasis added.)

---

[2] Shannopin also agreed to retain responsibility for all occupational disease claims filed by those same employees on or before the closing date.

[3] Section 305 of The Pennsylvania Occupational Disease Act of 1939, the Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §1405.

[4] Under the policy, the term "workmen's compensation law" is defined to mean the workmen's compensation law or workers' compensation law and any occupational disease law of the Commonwealth of Pennsylvania, and Part C of Title IV of the Federal Coal Mine Health and Safety Act of 1969, Pub. L. No. 91-173, 83 Stat. 742, 30 U.S.C. §901, *as amended*, commonly referred to as the Federal Black Lung Act.

Under Subsection II of the policy, the Fund also agreed to defend Shannopin against claims for benefits and to pay all expenses of such defenses. Pursuant to Subsection IV, captioned "Application of Policy," the policy stated that it applied to *"disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period."* (Emphasis added.)[5]

At the expiration of the policy between the parties, Shannopin did not renew its agreement or coverage with the Fund, but rather changed to a private carrier. Subsequent to the expiration of the policy period, certain employees, whose date of last employment occurred during the policy period, filed both State and Federal Occupational Disease Claims naming Shannopin as the defendant. The Fund defended these claims. With respect to some of the claims the Fund defended Shannopin on the basis of the fact that the employees had not been working for Shannopin for at least one-year, which is a defense pursuant to Section 301(c)(2) of The Pennsylvania Workmen's Compensation Act[6]. As a result of this defense, Shannopin was found not to be liable for the compensation claims, and liability fell upon J & L. However, because Shannopin contractually had assumed J & L's liability vis-a-vis these claims, J & L billed Shannopin. Shannopin requested that the Fund pay the claim. The Fund refused to do so, maintaining that the claims were not covered by Shannopin's insurance policy with

---

[5] Workmen's Compensation and Employers' Liability Policy (Policy), Plaintiff's Trial Exhibit 4..

[6] The Act of June 2, 1915, P.L. 736, 77 P.S. §411(2). This section provides in relevant part that "[t]he employer liable for compensation . . . shall be the employer in whose employment the employe was last exposed for a period of not less than one year to the hazard of the occupational disease claimed."

the Fund, due to the language of the policy which stated that the Fund agreed to pay "all compensation and other benefits required of the insured by the workmen's compensation law."

Shannopin commenced this action in this Court seeking coverage by the Fund of the above-referenced claims, pursuant to the policy of insurance which was issued to Shannopin by the Fund. By Order of the Commonwealth Court, the case was transferred to the Board of Claims. The Board of Claims found in favor of the Fund and against Shannopin. Shannopin filed this appeal.

In reviewing orders of the Board of Claims, this Court's scope of review is limited to determining whether an order of the Board is in accordance with law and whether its findings of fact are supported by substantial evidence. *Department of Transportation v. Semanderes,* 109 Pa. Commonwealth Ct. 505, 531 A.2d 815 (1987).

Shannopin raises several issues, all basically relating to breach of contract. Shannopin argues that its contractually-assumed liabilities were covered by the insurance contract and that the Fund breached the contract by refusing to pay the claims. Shannopin also contends that the Fund is estopped from refusing to pay the claims. Finally, assuming that the Fund has breached the contract, Shannopin contends that it is entitled to a refund of premium payments or to damages, and to costs and attorneys' fees.

Shannopin sets forth three grounds in support of its claim that the parties intended for the insurance contract to cover the liabilities which Shannopin contractually assumed from J & L. Shannopin first notes that pursuant to Subsection IV, the contract clearly provided for coverage of "*injury . . . by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the*

*disease occurs during the policy period.*" (Emphasis added.) Shannopin contends that the contractually-assumed liability is covered in this provision because the "last day of the last exposure" for the contractually-assumed claims occurred during the policy period.

Second, Shannopin states that if the parties had intended the contractually-assumed liabilities to be excluded for coverage "A" claims, such exclusion would have been explicitly stated, as it was for coverage "B" claims.[7]

Third, Shannopin states that the parties must have intended the policy to cover contractually-assumed liabilities, because the policy did not cover any other liabilities; and if the policy did not cover any liabilities, then Shannopin states that it paid $1,486,359.87 in premiums for what amounted to only legal defense protection and no protection against liabilities. Shannopin contends that such a result would be absurd and must be contrary to the parties' intent.

Shannopin reaches this conclusion by the following reasoning: First, Shannopin interprets Section 301(c)(2) of the Act as restricting liability to only those employers "in whose employment the employe was last exposed for a period of *not less than one year.* . . ." (Emphasis added.) Next, Shannopin notes that during the coverage period of the policy all employees were employed for a period of less than one year. Taking these premises together, Shannopin concludes that it would not be liable under

---

[7] The policy states in relevant part as follows:

EXCLUSIONS

This policy does not apply . . . (c) Under Coverage B, to liability assumed by the insured under any contract or agreement, but this exclusion does not apply to a warranty that work performed by or on behalf of the insured will be done in a workmanlike manner.

Policy, Plaintiff's Trial Exhibit 4.

the Act for any disability or death which occurred during its coverage period. Thus, if Shannopin would not be liable under the Act for any disability or death which occurred during the coverage period, and if the policy only covered claims for which Shannopin was liable under the Act, then the policy did not cover any liabilities at all. Shannopin thus concludes that the original premise (*i.e.* that the policy does not apply to contractually-assumed liabilities) must be false.

The Fund responds to Shannopin's first two arguments as follows: Because coverage "A" clearly is limited to claims for which Shannopin would be liable under the Act, and because Shannopin is not liable under the Act for the contractually-assumed liabilities, coverage "A" implicitly excludes contractually-assumed liabilities. The Fund thus contends that there was no need for the policy to explicitly exclude contractually-assumed liabilities from coverage. With respect to Shannopin's third argument, the Fund contends that Shannopin intended to pay for a policy which may have lacked coverage for any liabilities because it was required by law to purchase the policy.

Our appointed task is to reconstruct the intention of the two parties. We are guided in so doing by the following principles:

In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished. Where the words of the contract are clear and unambiguous, the intent of the parties must be determined exclusively from the agreement itself. Where the language of the written contract is ambiguous,

extrinsic or parol evidence may be considered to determine the intent of the parties. While courts are responsible for deciding whether, as a matter of law, written contract terms are either clear or ambiguous; it is for the fact finder to resolve ambiguities and find the parties' intent.

*Metzger v. Clifford Realty Corp.*, 327 Pa. Superior Ct. 377, 385, 476 A.2d 1, 5 (1984) (citations omitted).

We find that the intent of the parties is clearly stated in the policy. "Coverage A" specifically limited coverage to claims for which Shannopin would be liable *under the Act*. Because Shannopin is not liable under the Act for the contractually-assumed liabilities, "Coverage A" sufficiently excludes such liabilities, and there was no need to provide a specific exclusion for such liabilities as was done with respect to "Coverage B".[8]

We are not persuaded by Shannopin's second contention that the parties must have intended the policy to cover contractually-assumed liabilities because Shannopin could not be liable for any other claims during its first year of operation. Shannopin is mistaken in its belief that it could not be held liable under the Act for any death or disability which occurred during its first year of operation. Section 301(c)(2) of the Act provides in relevant part that:

In the event the employe did not work in an exposure at least one year for any employer during the three hundred week prior to disability or death, the employer liable for the compensation shall be that employer giving the longest period

---

[8] Whereas "Coverage A" limited coverage to Shannopin's liabilities under the state's workmen's compensation law, "Coverage B" excluded coverage of liabilities under the workmen's compensation law.

> of employment in which the employe was exposed to the hazards of the disease claimed.

Pursuant to this portion of the subsection, Shannopin would be liable under the Act for the death or disability of an employee which occurred during Shannopin's first year of operation if that employee had not been exposed while employed elsewhere for a longer duration.

In addition to its breach of contract theory, Shannopin posits an estoppel argument. Shannopin suggests that the Fund had the duty to timely notify Shannopin of the Fund's intent to deny coverage, and that as a result of the Fund's failure to so notify Shannopin, the Fund is estopped from denying coverage. Shannopin cites *Laroche v. Farm Bureau Mutual Automobile Insurance Co.*, 335 Pa. 478, 7 A.2d 361 (1939) and *Perkoski v. Wilson*, 371 Pa. 553, 92 A.2d 189 (1952) in support of its position that the Fund is estopped from denying coverage. These cases do not support Shannopin's contention that the Fund should be estopped from denying coverage. The Court in *Laroche* set forth the principle that

> when the insurer undertakes the defense of the tort action it becomes estopped thereafter to deny liability on the policy. . . . it is an essential element of estoppel that the person invoking it has been influenced by or has relied upon the representation or conduct of the person sought to be estopped.

*Laroche*, 335 Pa. at 484, 7 A.2d at 363. The Court clarified this principle, stating that where

> plaintiff surrendered no rights and was in no way misled or damaged merely because it was the insurer who conducted the defense against her claim . . . the insurer does not, by defending the original suit, waive any rights or become estopped

to repudiate liability in a subsequent action on the policy brought by the injured person.

*Id.* at 484, 7 A.2d at 363-64.

In *Perkoski,* the Court similarly required a showing of detrimental reliance before applying the equitable doctrine of estoppel. In that case, a husband and wife sued the insured, who was represented by counsel for the insurer. The husband was awarded a verdict of $6,000, and the wife was awarded a verdict of $10,000. The trial court refused the defendant's request for a new trial on condition that the plaintiffs file a remittitur for the amount of the verdict which was in excess of $13,940. The trial court let the plaintiffs decide which of the verdicts would be reduced. The husband agreed to a reduction of the verdict which had been awarded in his favor. The insurer paid the $10,000 judgment which had been entered in favor of the wife, but refused to pay the full amount of the reduced judgment which had been entered in favor of the husband. Coverage under the insurance policy was limited to $10,000 per person injured, with a $20,000 limit per accident. The insurer claimed that the bulk of the judgment which was entered in favor of the husband compensated him for loss of his wife's consortium, and that those damages were a consequence of the wife's injury. The insurer further claimed that the damages thus exceeded the $10,000 per injured person policy limit, and refused to pay the excess. Had the award against the wife been reduced, instead of the award against the husband, the insurer would have been liable to pay both judgments in full. Thus, the Court held that the insurer was estopped from denying full coverage because it failed to advise the insured that if the remittitur had been made applicable to the wife's verdict that the insurer would be liable in full, but that the insurer would not be liable in full if the remittitur had been made applicable to the husband's verdict.

In the matter *sub judice*, Shannopin states that it notified the Fund during the course of the Fund's defense of the workmen's compensation claims that the Fund's position was inconsistent with Shannopin's interests. Shannopin thus contends that the Fund's failure to advise Shannopin during the proceedings that it would deny coverage of contractually-assumed liabilities requires the application of the equitable principle of estoppel. In essence, Shannopin contends that the Fund should be estopped because it set forth a legitimate defense in the workmen's compensation cases, or because it failed to concede Shannopin's liability in those cases. We disagree. The Fund's successful defense of the workmen's compensation claims did not put Shannopin in a worse position than Shannopin would have been in had it known in advance that the Fund would deny coverage of contractually-assumed liabilities. There being no detrimental reliance, we decline to apply the equitable doctrine of estoppel.

Shannopin also contends that the Fund is equitably estopped from denying coverage based on the Fund's alleged misrepresentation of coverage. The fact that Shannopin may not have understood the full ramification of the policy provision limiting coverage to liabilities under the Act does not mean that the Fund misrepresented the extent of coverage. The contract specifically limits the coverage to liability under the Act and we find no misrepresentation on the part of the Fund.

Shannopin raises further issues concerning the type of relief which is warranted. There being no breach of contract, there is also no need to address these issues. We thus affirm the decision of the Board of Claims.

## ORDER

AND NOW, this 23rd day of March, 1989, the decision of the Board of Claims in the above-captioned matter is affirmed.