

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-2003

# USA v. 221,877.16

Precedential or Non-Precedential: Precedential

Docket 02-1264

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. 221,877.16" (2003). *2003 Decisions.* Paper 500.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/500

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed May 28, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-1264

_____

UNITED STATES OF AMERICA

v.

$8,221,877.16 IN UNITED STATES
CURRENCY REPRESENTING;
$6,871,042.36 CONTAINED IN ACCOUNT
NUMBER 030101107 KNOWN AS THE VENUS
ACCOUNT, HELD IN THE NAME OF OR
FOR THE BENEFIT OF KESTEN DEVELOPMENT
CORP. AT MTB BANK; $1,345,771.64
CONTAINED IN ACCOUNT NUMBER 12108
KNOWN AS THE TADELAND ACCOUNT HELD
AT FOREX ASSOCIATES WHICH MAINTAINS
AN ACCOUNT AT EAB BANK; $5,063.16
CONTAINED IN ACCOUNT NUMBER 08-1641-3
IN THE NAME OF OR FOR THE BENEFIT OF
RAMAL VENTURES AT ISRAELI DISCOUNT BANK
(Newark New Jersey Civil No. 00-cv-02667)

_____

KESTEN DEVELOPMENT CORP.

v.

MTB BANKING CORPORATION
(Newark New Jersey Civil No. 00-cv-04982)

_____

Kesten Development Corp., and
Turist-Cambio Viagens e Turismo Ltda.,
Appellants

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Nos. 00-cv-02667 and 00-cv-04982)
District Court Judge: Honorable Nicholas H. Politan

———————

Argued March 13, 2003

Before: BECKER, *Chief Judge*,* RENDELL and
AMBRO, *Circuit Judges.*

(Filed: May 28, 2003)

———————

Paul J. Fishman, Esq. [ARGUED]
Friedman, Kaplan, Seiler & Adelman
One Gateway Center, 25th Floor
Newark, NJ 07102

Mishell B. Kneeland, Esq.
Fleckman & McGlynn
515 Congress Avenue
1800 Bank of America Tower
Austin, TX 78701
   *Counsel for Appellants*

Peter W. Gaeta, Esq. [ARGUED]
Office of the U.S. Attorney
970 Broad Street, Room 700
Newark, NJ 07102

Stefan D. Cassella, Esq. [ARGUED]
U.S. Department of Justice
Asset Forfeiture Section
10th & Constitution Avenue, N.W.
Bond Building, 10th Floor
Washington, DC 20530
   *Counsel for Appellee*

———————————————————————

* Judge Becker completed his term as Chief Judge on May 4, 2003.

---

**OPINION OF THE COURT**

---

RENDELL, *Circuit Judge.*

The controversy before us focuses on over eight million dollars in forfeited funds. Fighting over these funds are, on the one hand, the corporations that claim them, Kesten Development Corporation and its Brazilian parent company, Turist-Cambio Viagens e Turismo Ltda. (collectively, "Kesten"), and on the other, the United States government, to whom they have been forfeited. Somewhere in between lies Kesten's bank, which, Kesten claims, improperly turned over the funds to the government. We address two issues: first, whether we should exercise our appellate jurisdiction when the appeal is from an order terminating one of two consolidated cases, and second, whether the District Court erred in refusing to entertain Kesten's dismissal motion and granting judgment of forfeiture to the government early in the government-initiated proceedings. We conclude that we should exercise our jurisdiction and we will reverse the District Court's award of judgment of forfeiture and remand for further proceedings.

## I. Background

Our story begins with the seizure of Kesten's funds. In January 1999, the DEA obtained warrants to seize the contents of bank accounts Kesten maintained at MTB and European American Bank. The warrants directed the agents to seize the funds within ten days. Within that time frame, the DEA seized all the existing funds in both accounts, totaling approximately $7.3 million.[1] The DEA then orally directed MTB to send it any funds subsequently deposited or wired into the MTB account. From January through December 1999, MTB did so, forwarding to the DEA over $800,000 in additional funds (the "after-deposited funds").

---

1. The DEA also seized approximately five thousand dollars from an Israeli bank. Kesten does not claim those funds.

Kesten attacked the seizures on two fronts. First, Kesten brought a four-count suit against MTB in the United States District Court for the Southern District of New York claiming that MTB had breached its contractual, statutory, and common law obligations by turning over the after-deposited funds without any legal process authorizing that action (the "MTB action"). Next, Kesten filed a motion under Federal Rule of Procedure 41(e) in the United States District Court for the District of New Jersey seeking the return of all the funds seized by the DEA. In June 2000, after negotiations with Kesten broke down, the government instituted the forfeiture action by filing a civil complaint for forfeiture in the same court.[2]

The forfeiture complaint alleged that the seized funds were involved in a drug money laundering conspiracy headed by a South American money exchanger, Markos Glikas. Glikas was arrested in April 1998 and convicted of conspiracy to commit money laundering in March 1999. As part of the conspiracy, Glikas allegedly delivered drug proceeds to Antonio Pires de Almeida ("Pires"), the former owner of Turist-Cambio, who would then launder the money through various intermediate accounts, ultimately depositing it in Kesten's account at MTB (the "Venus" account). The government claimed that the seized funds were subject to forfeiture under 18 U.S.C. §§ 981 and 984 for involvement in transactions that violated the federal money laundering statutes. Along with the complaint, the government served nearly forty pages of detailed interrogatories on Turist-Cambio and Kesten, as authorized by the rules governing forfeiture proceedings.

In July 2000, pursuant to a stipulation extending the deadline for filing a claim, Kesten filed a verified claim to the funds, over Pires's signature as its legal representative. Kesten was thus prosecuting a civil action in New York and defending a civil forfeiture action in New Jersey, both of which revolved around the funds seized from the Venus account.

After the government filed the forfeiture action, MTB filed a motion to have the MTB action stayed, to have the

2. Kesten's 41(e) motion was thereafter denied without prejudice.

government joined as an indispensable party, or to have the action transferred to the District of New Jersey. Finding that the MTB action could have been brought in New Jersey and that transfer would serve the interests of justice because the two actions involved common questions about the propriety of the seizure, the New York District Court granted the motion for transfer. *Kesten Dev. Corp. v. MTB Banking Corp.*, 00 Civ. 2730 (S.D.N.Y. filed Sept. 22, 2000).

At a status conference after the transfer, the Magistrate Judge overseeing discovery in the forfeiture action entered an order sua sponte consolidating the forfeiture and MTB actions "for all purposes." The Judge then ordered the MTB action "stayed for all purposes pending a decision on the motions" then before the Court in the forfeiture action.

The motions then before the Court in the forfeiture action arose out of Kesten's motion to dismiss. The government had granted Kesten additional time to "answer or otherwise respond to" the forfeiture complaint. Within the stipulated time period, Kesten filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12, based on, *inter alia*, the government's failure to file the complaint within the applicable statute of limitations. Rather than responding to Kesten's motion, the government cross-moved for an order directing Kesten to answer the complaint and respond to the interrogatories, arguing that the Supplemental Rule governing forfeiture pleadings was inconsistent with the relevant Federal Rule of Civil Procedure and required Kesten to answer the interrogatories before filing any dispositive motions. The District Court agreed, holding that a forfeiture claimant may not file a motion to dismiss, or any other dispositive motion, in lieu of an answer. *United States v. $8,221,877.16 in U.S. Currency*, 148 F. Supp. 2d 427, 434 (D.N.J. 2001). The Court then dismissed Kesten's motion to dismiss without prejudice and directed Kesten to serve its answer and respond to the interrogatories.

Faced with the prospect of responding to enormously detailed interrogatories, Kesten petitioned the Court for relief. After a hearing, the Magistrate Judge limited the scope of the interrogatories and ordered Pires to submit to a deposition in the United States. (Mag. Order of July 13, 2001) Unfortunately for Kesten, Pires declined to do so, as

he was apparently in ill health and also feared that he would be arrested upon entry into the U.S. He did, however, indicate his willingness to be deposed in Brazil. Kesten responded to the remaining interrogatories but never produced Pires for the deposition.

The government then moved for discovery sanctions under Rule 37(b), asking the District Court to strike Kesten's claim. The District Court granted the government's motion, dismissed Kesten's claim to the funds, and, twelve days later, entered a final judgment of forfeiture. Kesten thus lost the funds without ever having a chance to attack the complaint.

MTB then filed a motion to dismiss the MTB action, arguing that Kesten should be barred by principles of res judicata and collateral estoppel from asserting any further interest in the funds in the MTB action, or alternatively that Kesten's civil suit should be dismissed for the same discovery violation that resulted in the dismissal of Kesten's claim to the funds because MTB was also purportedly harmed by Kesten's failure to produce Pires. A1494. That motion is still pending.[3]

## II. Jurisdiction

We exercise jurisdiction pursuant to 28 U.S.C. § 1291 over those district court orders that are final. The District Court here dismissed Kesten's claim and entered a forfeiture judgment in favor of the government that would ordinarily be considered final. *See, e.g., United States v. Ten Thousand Seven Hundred Dollars & No Cents*, 258 F.3d 215, 221 (3d Cir. 2001) (finding decree of forfeiture to be final, appealable order); *United States v. Contents of Accounts Nos. 3034504504 & 14407143 (In re Friko Corp.)*, 971 F.2d 974, 978 n.3 (3d Cir. 1992) (finding order striking claim to be final, appealable order). But this is no ordinary forfeiture case. The forfeiture action from which Kesten appeals was consolidated "for all purposes" with the civil

---

3. Judge Politan presided over the forfeiture and bank actions until his retirement in December 2002. At that time, both actions were transferred to Judge Cavanaugh.

action that Kesten initiated against MTB Bank, which is still pending. Normally, under Rule 54(b), any order that disposes of "fewer than all of the claims or the rights and liability of fewer than all the parties" is not a final, appealable order unless certified as such by the district court. Fed. R. Civ. P. 54(b).

Kesten argues that we may exercise jurisdiction because the orders appealed from should be considered final notwithstanding the pendency of the bank action.[4] Interestingly, MTB has notified the Court that it is not a party to the case on appeal and is not directly impacted by the question of our jurisdiction over the issues presented in the forfeiture case. The government, although it recognizes that there is an issue as to our jurisdiction, also urges the Court to address the forfeiture issues before the MTB action proceeds.

The consolidation of two cases does not automatically preclude the appealability of an order in one. We have consistently rejected a bright-line rule, preferring a case-by-case approach that examines the overlap among the claims, the relationship of the various parties, and the likelihood of the claims' being tried together. *See Hall v. Wilkerson*, 926 F.2d 311, 314 (3d Cir. 1991); *Bergman v. Atlantic City*, 860 F.2d 560, 567 (3d Cir. 1988). Applying this fact-specific approach to the case at hand, we conclude that the orders in the forfeiture case are final for purposes of appeal.

A close examination of our previous precedents in which we have spoken on this issue guides our reasoning and supports this result. In *Bergman*, our first case to address this issue, we held that an order disposing of one suit that had been consolidated for all purposes of discovery and trial with a second suit was not a final, appealable order where the second suit was still pending. *Id.* at 567. There, a homeowner, suing in his individual capacity and seeking to represent a class of homeowners, sued various municipal and housing authorities for amending a development plan without the consent of the homeowners. The Homeowners Association that represented the relevant homeowners filed

---

4. Kesten has moved the District Court for an order severing the two actions. As of this appeal, that motion is still pending.

a second suit with the same central claims. The two suits were then consolidated "for all purposes of discovery and trial." *Id.* at 562-63. Following consolidation, the district court granted summary judgment for the defendants against the individual homeowner. The individual homeowner appealed. *Id.* at 563.

We dismissed the appeal for lack of appellate jurisdiction. In coming to our conclusion that the summary judgment order in the individual homeowner's case was not a final order, we discussed our reasoning in *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977), in which a similar issue of finality had been presented, but in the context of the certification of a summary judgment order in one of two consolidated cases. *Bergman*, 860 F.2d at 564. There, two actions had been consolidated, but not "for all purposes." We held that the two cases were not a single unit and that an order in one case could be certified under Rule 54(b). *Bogosian*, 561 F.2d at 441. We looked behind the consolidation label and examined the actual relationship of one case to the other. First, we noted factors mitigating against the cases' separateness: "That both plaintiffs are represented by the same attorney, the suits are filed in the same forum, are before the same judge, and the complaints and the defendants are identical." *Id.* However, we then noted that "the cases have not been consolidated for trial," and that it was "possible that the cases could be scheduled for trial at different times and be tried before different juries." *Id.* We then held that "at least absent consolidation for all purposes of cases separately filed, each civil action is to be viewed as a separate unit." *Id.*

In *Bergman* we relied on our reasoning in *Bogosian* and endorsed consideration of the factors we had outlined there for determining whether an order in a consolidated case was final for purposes of appeal. *Bergman*, 860 F.2d at 567. Rejecting a bright-line rule, we noted the relevant factors as including whether the cases were in the same forum before the same judge, whether the claims and parties were identical, and whether the cases were consolidated for trial or just for pre-trial administration. *Id.* We then reasoned that, because the two cases were consolidated for all purposes of discovery *and trial*, and the adjudication of the

issues as to the individual plaintiff would necessarily affect the rights of the Homeowners Association, the order disposing of the individual's claim was not final. *Id.*

In our next case in which we addressed "finality" concerns in consolidated actions, we applied the *Bogosian* factors and found that an order disposing of one case *was* a final order for purposes of appeal. *See Hall*, 926 F.2d at 314. In *Hall*, we were faced with three consolidated cases: two were declaratory judgment actions requesting a determination as to whether a driver who had been in an accident was an "insured" under an insurance policy, and the third was a tort action against the driver. *Id.* at 312-13. After a hearing, the court entered a judgment that the driver was not an "insured." The driver appealed, even though the district court refused to certify the judgment as final. The tort action was scheduled for trial several months later. *Id.* at 313.

We held that the driver could appeal the order in the declaratory actions. *Id.* at 314. We noted that our rulings in *Bergman* and *Bogosian* had turned on whether the cases had been *consolidated for trial. Id.* We also emphasized that in *Bergman* the complaints in the two actions were "substantially similar." *Id.* We then applied the *Bogosian* factors and determined that because the claims were not the same, the parties were not identical, and it was unlikely that the actions would be tried together because trial of the insurance coverage issue before the same jury would have impermissibly introduced the issue of insurance into the tort action, the order in the declaratory action was final. *Id.*

Our case law thus instructs us to apply the *Bogosian* factors to determine whether the MTB action and the forfeiture action here are truly a single unit. When we do so, we find that, as in *Hall*, the orders on appeal before us from the forfeiture action are final and appealable.

Although we are faced with two cases that were ordered consolidated "for all purposes," a label that seems to make this case more akin to *Bergman*, the consolidation order here was entered by the Magistrate Judge *sua sponte*, without briefing or argument, causing some uncertainty as to what the Court actually intended to accomplish. When

we look beyond the label, we find that the two actions are not consolidated in a way that would preclude our jurisdiction, and that our disposition of Kesten's appeal in the forfeiture action would probably advance, rather than hinder, the MTB action.

First and foremost, the issues on appeal in the forfeiture action are completely distinct from the underlying issues in the MTB action. The forfeiture action will turn on the government's right to seizure of the funds under a specific statutory framework. By contrast, the MTB action challenges the propriety of the bank's conduct vis a vis its depositor and the government. And, although both cases may touch upon the legality of the seizure warrant, the forfeiture action comes to us on procedural points peculiar to forfeiture proceedings that have nothing whatsoever to do with the seizure of the funds or the merits of Kesten's claim to the funds, let alone the merits of Kesten's action against MTB Bank. The crucial issue we must consider is whether the rules applicable in forfeiture cases permitted Kesten to move to dismiss the forfeiture complaint. Furthermore, the central issue in the forfeiture action as it moves forward will be whether the funds were the proceeds of illegal activity. In contrast, the central issue in the MTB action is whether MTB should have turned over Kesten's money at the oral request of the DEA. Though there may later be a slight similarity of subject matter regarding the seizure, this is not enough to preclude our jurisdiction over the present question. In fact, it could be argued that a final order in the forfeiture action before the MTB action proceeds further is advisable, as Kesten might view the MTB action differently if the forfeiture were to be overturned and the funds returned.

Second, the parties in both actions are not identical, nor do they have identical interests. Although the government and MTB argue that the government is a necessary party to the MTB action, the government has never been joined, nor has Kesten shown any inclination to name the government as a defendant. The sole question in the MTB action is whether the Bank properly turned over the money, not whether the money was properly seized by the government.

Finally, the two actions are governed by somewhat different procedural rules and have been treated separately from the start. We find it highly unlikely that they would or could ever be tried together. The two are simply not intertwined. Unlike in *Bergman*, the resolution of the forfeiture issues will not in any way hamper the rights of MTB in the MTB action. If anything, as we have noted, finality would enhance the situation. And, in fact, when the Magistrate Judge entered the consolidation order, he also stayed the MTB action pending the outcome of motions then before the Court in the forfeiture action. Those motions are the same motions that eventually gave rise to this appeal. As MTB has recognized, it has never had any interest in the issues before us. We therefore see no reason not to address these issues.

In short, we find that this case is more like the distinct declaratory and tort actions in *Hall* and the separable suits in *Bogosian* than the nearly indistinguishable homeowners' suits in *Bergman*. Because an examination of the *Bogosian* factors weighs heavily in favor of finality, we hold that the orders in the forfeiture case are final orders for the purposes of section 1291. We will therefore exercise our jurisdiction to decide the issues on appeal.

## III. Merits

Kesten contends that the Supplemental Rules governing admiralty and forfeiture proceedings do not bar it from filing a motion to dismiss before answering interrogatories that the government served with its complaint, and that the District Court erred in holding to the contrary. It urges that it was authorized to file its motion to dismiss before serving an answer, and that its motion should be granted because the government failed to file suit within one year of the date of the offense.[5] The government takes the position that the District Court's decision refusing to consider Kesten's motion to dismiss was sound, as was its dismissal of

---

5. Kesten also contends that the Magistrate Judge exceeded his authority by ordering Pires' deposition in lieu of requiring a complete answer to the interrogatories. As we are vacating the District Court's order compelling Kesten to answer the interrogatories, this issue is moot.

Kesten's claim as a sanction for discovery abuses, and that it timely commenced the forfeiture action.

## A. Dismissal of the Motion to Dismiss

Kesten first asks us to reverse the Court's order refusing to entertain its motion to dismiss the forfeiture complaint. Following the procedure authorized by Federal Rule of Civil Procedure 12, Kesten filed a 12(b)(6) motion. It did so after it had filed a verified claim but before answering the complaint or responding to the interrogatories served therewith. The District Court held that Rule 12 was "inconsistent with" Supplemental Rule C(6), and that Kesten was required to serve an answer and respond to the interrogatories before it filed any motions. The Court thus dismissed Kesten's motion.[6] For the reasons that follow, we will reverse the Court's order and reinstate Kesten's motion.

Parties to civil forfeiture proceedings are the servants of two procedural masters: the Supplemental Rules specially devised for admiralty and *in rem* proceedings, and the generally applicable Federal Rules of Civil Procedure ("Civil Rules"). The balance between the two is struck in favor of the Supplemental Rules, which always apply to civil forfeiture proceedings. *See* 18 U.S.C. § 983(a)(3).[7] However, the Supplemental Rules, like the former admiralty rules from which they are derived, "are not comprehensive codes regulating every detail of practice," *Miner v. Atlass*, 363 U.S. 641, 648 (1960) (construing the former admiralty rules); rather, they are special provisions that overlay the Civil Rules, adding unique requirements necessary only in

---

6. Our review of the District Court's interpretation of Rule C(6) is plenary. *Tudor Dev. Group, Inc. v. U.S. Fidelity & Guar. Co.*, 968 F.2d 357, 359 (3d Cir. 1992).

7. Section 983 was enacted in August 2000 as part of the Civil Asset Forfeiture Reform Act ("CAFRA") and therefore does not apply to this forfeiture claim, which was filed before CAFRA took effect. *See United States v. One "Piper" Aztec*, 321 F.3d 355, 358 (3d Cir. 2003) (holding that CAFRA does not apply retroactively). However, section 983 merely made explicit the pre-CAFRA practice of applying the Supplemental Rules to civil forfeiture actions. *See, e.g.*, *United States v. 51 Pieces of Real Prop.*, 17 F.3d 1306, 1308 n.2 (10th Cir. 1994) (recognizing that the Supplemental Rules apply to forfeiture actions under 18 U.S.C. § 981).

forfeiture and admiralty proceedings that have no place in general civil litigation.[8] The Civil Rules therefore also apply to *in rem* proceedings, but only to the extent that they are not "inconsistent with" the Supplemental Rules. Supp. R. A. This scheme seems simple enough. The difficulty arises in determining when precisely a Civil Rule is "inconsistent with" a Supplemental Rule.

Here, the District Court held that Civil Rule 12's procedure for motions in lieu of an answer was inconsistent with Supplemental Rule C(6)'s pleadings procedure. It reasoned that Rule C(6) requires "an 'answer' and only an answer," and further requires a response to interrogatories, and that it therefore could not be reconciled with Rule 12, which allows for motions *in lieu of* an answer. Having found that the allowance of motions in Rule 12 was inconsistent with the lack of a provision for motions in Rule C(6), the Court dismissed Kesten's motion to dismiss, and required it to serve an answer and respond to the interrogatories before filing any other motions.[9] The government asks us to affirm this order.

---

8. The Rules of Practice in Admiralty and Maritime Cases were rescinded in 1966, when the rules were merged into the Federal Rules of Civil Procedure. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 390 (3d Cir. 2002) (holding that the applicability and construction of Supplemental Rule B presents a federal question for purposes of removal).

9. The District Court couched its dismissal of Kesten's motion in terms of Kesten's failure to establish "statutory standing" to file a motion to dismiss. However, the Court's terminology is misleading, as Kesten's right to appear before the Court to contest the forfeiture action is a separate concept from whether Kesten had to serve an answer before filing its motion to dismiss.

A forfeiture claimant must meet both Article III and statutory standing requirements before it may stand before a court to contest a forfeiture. *In re Friko Corp.*, 971 F.2d at 984. "Article III standing requires the claimant to show an interest in the property sufficient to create a 'case or controversy,' while statutory standing requires claimants to comply with certain procedures." *Id.* The statutory standing procedures with which a forfeiture claimant must comply are set forth in Rule C(6), and involve the timely filing of a verified claim. The purpose of statutory standing is to force claimants "to come forward as quickly as possible after the initiation of forfeiture proceedings, so that the court may hear

Kesten asks us to reverse and reinstate its motion. It argues that Rule C(6) is a truly *supplemental* rule, one that does nothing more than provide for certain unique aspects

---

all interested parties and resolve the dispute without delay," and to minimize the danger of false claims by requiring claims to be verified or solemnly affirmed. *United States v. Various Computers & Computer Equip.*, 82 F.3d 582, 585 (3d Cir. 1996).

The District Court found that Kesten had satisfied both Article III and statutory standing requirements and was properly before the Court. It held that "Pires' statement under oath, coupled with the government's allegations that Pires controlled the seized funds," was enough to show that Kesten had a sufficient possessory interest in the seized funds to establish "statutory standing for purposes of defending this *in rem* action."

Confusingly, the Court went on to state that although Kesten had "statutory standing" to defend the forfeiture, it did not have different "statutory standing" to file a motion to dismiss. It reasoned even though Kesten was a proper claimant, Rule C(6) was inconsistent with Rule 12 and required Kesten to serve an answer before filing any motions. The Court then dismissed Kesten's motion without prejudice, and with the right to renew when Kesten had filed an answer and responded to the interrogatories.

However, the Court's holding regarding the inconsistency between the Civil Rules and the Supplemental Rules had little to do with Kesten's *statutory standing*. Statutory standing is a *threshold* issue that determines whether a party is properly before the court. Had the Court truly held that Kesten lacked statutory standing to proceed, the proper response would have been to strike Kesten's claim. *Cf. 51 Pieces of Real Prop.*, 17 F.3d at 1319 (finding no abuse of discretion where district court struck untimely claim); *United States v. Ford 250 Pickup 1990*, 980 F.2d 1242, 1245 (8th Cir. 1993) (finding no abuse of discretion where district court struck claim because answer was untimely); *United States v. United States Currency in the Amount of $2,857*, 754 F.2d 208, 213 (7th Cir. 1985) (striking claim because it was not "verified on oath"); *One Parcel of Real Prop. Located at Route 2*, 46 F. Supp. 2d 572 (S.D. Miss. 1998) (striking claim because answer was untimely); *United States v. $288,914*, 722 F. Supp. 267 (E.D. La. 1989) (same). Because the Court chose instead to continue the litigation and preserve Kesten's right to file a motion at a later time, we view its reference to a "different" standing issue regarding the filing of a motion to have been merely a misleading labeling of the issue and conclude that it did not actually find that Kesten lacked any aspect of standing.

of forfeiture proceedings, namely, the filing of a claim and the timing for filing responsive pleadings in light of the claims process, but does not displace the motions scheme set forth in Rule 12. Kesten urges that the District Court's reading of Rule C(6) as completely disallowing pre-answer motions is not consistent with Supreme Court case law, the Supplemental Rules, and routine practice in the district courts.

We have found no reported decision that analyzes the issue as to whether Rule 12 is indeed "inconsistent with" Supplemental Rule C(6). One court has, in an unpublished opinion and without a great deal of discussion, adopted the view taken here by the District Court. *See United States v. $38,870.00*, No. 7:99-47 (M.D. Ga. filed Sept. 24, 1999) (dismissing motion to dismiss because claimant had not yet served an answer). Other federal courts have entertained motions to dismiss prior to the claimant's serving an answer, but they have done so without specifically addressing whether Rule 12 is inconsistent with Rule C(6). *See, e.g., United States v. 2751 Peyton Woods Trail*, 66 F.3d 1164 (11th Cir. 1995) (remanding for consideration of claimant's motion to dismiss); *United States v. Funds in the Amount of $29,266.00*, 96 F. Supp. 2d 806 (N.D. Ill. 2000) (denying motion to dismiss); *United States v. 657 Acres of Land*, 978 F. Supp. 999 (D. Wyo. 1997) (same); *United States v. Funds in the Amount of $9,800*, 952 F. Supp. 1254 (N.D. Ill. 1996) (dismissing complaint for failure to state a claim).

Kesten cites to the Supreme Court's decision in *Degen v. United States*, 517 U.S. 820 (1996), as controlling authority supporting its position, but we do not read it as such. There, the Court held that a district court may not strike a claimant's filing and enter summary judgment against him in a civil forfeiture suit merely because he failed to appear in a related criminal prosecution. *Id.* at 826. While the Court did comment that consideration of the claimant's motion to dismiss would impose no great burden on the government, because it was based on a failure to file within the statute of limitations, defense of which does not require a great deal of discovery, *id.* at 827-28, the issue of motion practice in forfeiture cases as presented to us was not

before it. We do not agree with Kesten that the one sentence in *Degen* regarding motions to dismiss controls the analysis here. Although we take some policy guidance from the Supreme Court's discussion regarding the importance of such motions and the ease with which the government may defend against them, as we discuss *infra*, we do not read anything further into the Court's dicta and certainly do not find within it any ruling on the issue of Rule 12's interaction with Supplemental Rule C(6).

As there is no binding precedent to guide us, we must draw upon principles of statutory construction, look to the overall scheme imposed by the Supplemental Rules, and consider the policy behind pre-answer motions.

We will first examine the language of the two rules at issue. Rule 12 provides the civil procedure for answers. It states in relevant part:

> **(a) When Presented.**
>
> (1) *Unless a different time is prescribed* in a statute of the United States, a defendant shall serve an answer (A) within 20 days after being served with the summons and complaint . . . . (4) Unless a different time is fixed by court order, *the service of a motion permitted under this rule alters these periods of time* as follows: (A) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action . . . .

Fed. R. Civ. P. 12 (emphasis added). Motions are specifically permitted and itemized under Rule 12(b), which states:

> Every defense, in law or fact, to a claim for relief in any pleading, . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b).

Rule C(6) provides the Supplemental Rule for claims and answers. It states in its entirety:

> **Claim and Answer; Interrogatories.** The claimant of property that is the subject of an action in rem *shall file a claim within 10 days after process has been executed*, or within such additional time as may be allowed by the court, and *shall serve an answer within 20 days after the filing of the claim*. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action. If the claim is made on behalf of the person entitled to possession by an agent, bailee, or attorney, it shall state that the agent, bailee, or attorney is duly authorized to make the claim. *At the time of answering the claimant shall also serve answers to any interrogatories served with the complaint.* In actions in rem interrogatories may be so served without leave of court.[10]

Supp. R. C(6) (emphasis added).

Thus, standard civil proceedings contemplate a complaint followed by an answer or a motion. The Supplemental Rule provides for initial "process" — by complaint — then the filing of a claim, then an answer to the complaint. No mention is made of motion practice. The question we must answer is whether the pleadings scheme laid out in the Civil Rules is "inconsistent with" the pleadings scheme in Supplemental Rule C(6).

According to Webster's Dictionary, "inconsistent" means "lacking in correct logical relation, contradictory," or "not in agreement or harmony, incompatible." *Webster's II New Riverside University Dictionary* 620 (1988). Applying this definition, we can see that several of the Supplemental Rules and the Civil Rules are clearly incompatible and disharmonious. For example, Civil Rule 12(a)(1) is inconsistent with Supplemental Rule C(6) because the two cannot be logically read together: a requirement that an answer be filed within twenty days of *service of process*

---

10. We use here the wording of Rule C(6) as of the date the forfeiture complaint was filed. The rule has since been amended to provide for a "verified statement" instead of a "claim" but remains substantively unchanged. *See* Supp. R. C(6) (2001).

simply cannot be reconciled with a rule allowing an answer to be served within twenty days after *filing a claim*. Similarly, Supplemental Rule E(2), which requires a forfeiture complaint to "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading," is incompatible with Civil Rule 8(a), which allows for a "short and plain statement of the claim." *United States v. $39,000*, 801 F.2d 1210, 1216 (10th Cir. 1986). The two rules are contradictory: one requires detail, the other does not. As there is a conflict, the Supplemental Rule prevails. Rule E(2) is also inconsistent with Civil Rules 12(e) and (f), which require a party to make a motion for a more definitive statement *before* filing a motion to strike. *United States v. $38,000*, 816 F.2d 1538, 1547 n.20 (11th Cir. 1987). The civil and supplemental schemes cannot be fit together: one cannot be required to make a motion for a definitive statement and also *not* be so required. Again, in such a situation, the Supplemental Rule takes precedence.

In contrast to these instances of clear incompatibility, the civil scheme for motions in Rule 12(a)(4) *can* be read together with the supplemental pleading requirements in Rule C(6). Supplemental Rule C(6), like Civil Rule 12(a)(1), provides the timing requirements for responsive pleadings. Rule C(6), however, operates in the world of forfeiture, and therefore must include different instructions. Whereas civil complaints are served on a known defendant, forfeiture complaints are served on the *res*, the property. Before the action can proceed, the party claiming the *res* must make himself known by filing a claim. The claim adds an extra step not contemplated by the Civil Rules. The Supplemental Rules must therefore instruct parties that before they may file an answer, they must first file a claim. In terms of timing, the claim in a forfeiture proceeding is equivalent to the answer in a general civil proceeding: both begin a responsive pleading process, and both must be filed within twenty days of service of process. Parties to forfeiture proceedings, however, must then also be apprised of when the answer to the complaint is due. Rule C(6) instructs that it must be filed within ten days after the filing of the claim.

Neither Civil Rule 12(a)(1) nor Supplemental Rule C(6) includes any discussion of motions. They both simply provide that "an answer" must be served within a certain time period. Clearly, however, under the Civil Rules, Rule 12(a)(4) modifies Rule 12(a)(1) and allows a defendant to file a motion before filing an answer. We see no reason why Rule 12(a)(4) cannot similarly modify Supplemental Rule C(6). The term "answer" in Rule C(6) should be interpreted the same way it is in Rule 12(a)(1), whose timing provisions Rule C(6) supplants. Under the Civil Rules, 12(a)(1)'s requirement that "an answer" be served within twenty days of service of process is not read to trump 12(a)(4)'s provision for filing a motion in lieu of answer. Neither must Supplemental Rule C(6)'s requirement that "an answer" be served within ten days of the filing of a claim be so read.

Rule 12(a)(4) is simply not incompatible with Supplemental Rule C(6). Rather, the two fit comfortably together, the same way that Rules 12(a)(1) and 12(a)(4) do. Just as a civil defendant may respond to a complaint with a motion to dismiss, and must then file an answer within ten days after the court disposes of that motion, a forfeiture claimant may, after being served with a complaint and filing a verified claim, respond to a forfeiture complaint by filing a motion to dismiss; the claimant must then serve an answer within ten days after the court disposes of that motion. There is no "either/or" choice to be made. Asking whether C(6) *or* 12(a)(4) applies is like asking whether 12(a)(1) *or* 12(a)(4) applies. The simple answer is: both do.

The compatibility of Supplemental Rule C(6) and Rule 12(a)(4) is supported by another provision of the Supplemental Rules, case law arising out of a similar context, and policy considerations.

First, only by reading Supplemental Rule C(6) to permit pre-answer motions in forfeiture can we reconcile that rule with Supplemental Rule E(2), the enforcement of which appears to require such motions. As stated above, Rule E(2) imposes a particularity requirement on forfeiture pleadings. It requires the government to draft its complaint with precision so that a claimant need not move for a more definite statement before framing responsive pleadings. Supp. R. E(2). This particularity requirement arises out of

the drastic nature of forfeiture actions, which allow for the seizure of property while the claim on the merits is litigated. Rule E(2) is thus an important safeguard against the government's seizing and holding property on the basis of mere conclusory allegations that the property is forfeitable. *United States v. One Partially Assembled Drag Racer*, 899 F. Supp. 1334, 1340 (D.N.J. 1995). Claimants can enforce Rule E(2) by filing motions to dismiss for lack of particularity prior to forming their responsive pleadings. *See, e.g., United States v. Premises & Real Prop. at 4492 S. Livonia Rd.*, 889 F.2d 1258, 1266 (2d Cir. 1989) (affirming denial of motion); *United States v. Funds in the Amount of $29,266.00*, 96 F. Supp. 2d 806, 811 (N.D. Ill. 2000) (denying motion); *One Partially Assembled Drag Racer*, 899 F. Supp. at 1341 (same).

Kesten persuasively argues that if Rule C(6) were to bar the filing of motions prior to answers, as the government suggests, claimants would have no mechanism for holding forfeiture complaints to the particularity required in Rule E(2). If a complaint were vague, claimants would nonetheless be obliged to first file a general answer and respond to what may be very extensive interrogatories before moving for relief from the insufficient complaint. This cannot be. The government's response, that claimants *could* wait until they file an answer and respond to the interrogatories before attacking the validity of the complaint, *see United States v. Currency $267,961.07*, 916 F.2d 1104, 1106 (6th Cir. 1990) (stating that claimant first filed a claim and answer and then filed a motion to dismiss the complaint for lack of particularity), is not responsive. The very purpose of Rule E(2) is to protect claimants from having their property held and from being exposed to invasive discovery on the basis of vague, conclusory complaints. Under the government's reading, this goal would be undermined by Rule C(6). That claimants *can* wait to file a motion to dismiss, and in the meantime suffer the seizure of their property on the basis of what may be an insufficient complaint, does not mean that they *must*. We will not read Rule C(6) to frustrate so directly a claimant's ability to enforce the particularity requirement in Rule E(2).

Next, the Court of Appeals for the First Circuit's analysis

in *United States v. One 1987 BMW 325*, 985 F.2d 655 (1st Cir. 1993), supports our view that when a Supplemental Rule is silent on a particular procedure, we should not take that silence as an indication that the procedure has no place in forfeiture, but rather should fill the gap with the relevant Civil Rule. There, the court reversed the district court's order striking a claim as a sanction for the claimant's failure to answer the interrogatories served with the complaint. *Id.* at 656. In determining what procedure applied to remedy a forfeiture claimant's failure to respond to the interrogatories, the court first examined the Supplemental Rules. When it did, it found those rules "completely bereft of guidance concerning what measures may be appropriate when parties fail to serve answers to interrogatories in a full and timely fashion." *Id.* at 659. The court then looked to Rule 37 to fill the gap. *Id.* In so doing, the court rejected the government's "curious interpretation" of Supplemental Rule C(6) as "allowing dismissal in the first instance if interrogatories are served thereunder and then ignored." *Id.* at 659-60. Because Rule C(6) was silent on the topic of discovery sanctions, the *BMW* court "[d]iscern[ed] no hint of inconsistency" between Rule C(6) and Rule 37, and held that the use of discovery sanctions in forfeiture actions was properly governed by its Rule 37 jurisprudence. *Id.* at 660. Thus, silence in the Supplemental Rules was taken not as an indication that discovery sanctions had no place in forfeiture, but rather as a sign that the Civil Rules were meant to step in and provide the proper procedure.[11]

---

11. The leading treatise on forfeiture also agrees with our interpretation of Rule C(6), and has in fact opined that the District Court's ruling in this case was incorrect. *See* David B. Smith, *Prosecution and Defense of Forfeiture Cases*, ¶ 9.04[1] n.2 (Dec. 2002). Smith explains:

> To make matters worse, one court has incorrectly held that a claimant cannot file a Rule 12(b) motion before it has filed an answer under Rule C(6) *and* answered any interrogatories served with the Complaint. Contrary to that opinion, there is no inconsistency between Rule 12(b) and Rule C(6). Rule C(6) has no language suggesting that a Rule 12(b) motion cannot be filed in lieu of an answer.

*Id.* (citation omitted).

Finally, our interpretation of Supplemental Rule C(6) is buttressed by policy considerations. Civil Rule 12(b) motions are intended to "streamline[ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Forfeiture proceedings are no different in this regard. Defenses such as a failure to adhere to the statute of limitations can be litigated without a great deal of discovery. If a complaint should be dismissed, the government should not be able to prolong dismissal simply because the claimant has not responded to interrogatories that the claimant should never have been required to answer in the first place. Motions under Rule 12(b) provide litigants with a fundamental procedural safeguard and prevent burdensome discovery in meritless cases. In the words of the Supreme Court, "If [defenses requiring little discovery] have merit, the government should not prevail; if they are groundless, the government's interests will not be compromised by their consideration." *Degen*, 517 U.S. at 827-28.

We have been presented with no evidence that Supplemental Rule C(6) was intended to pull the rug out from under forfeiture claimants by abolishing the time-honored protections provided in Rule 12(b). The advisory committee notes explain that the procedure for serving interrogatories with the complaint is justified by "the special needs of expedition that often arise in admiralty." Supp. R. C advisory committee's note. Contrary to the government's urging, the procedure for interrogatories does not appear to have been provided to inform the government as to the claimant's statutory standing in forfeiture cases. In fact, the notes later acknowledge that the needs of expedition "do not commonly arise in forfeiture proceedings." *Id.* The advisory committee made no other comment regarding the reason for allowing the government to serve interrogatories with the complaint, nor did it indicate that the special needs of expedition are so great that they completely override the procedural safeguards of Rule 12(b). We will therefore not read into Rule C(6) any intention to do so.

The government vigorously argues that our interpretation of Supplemental Rule C(6)'s interaction with Rule 12

contradicts the policy underlying the Supplemental Rules. It urges that we cannot "assume" that the Supplemental Rules incorporate the motions scheme in Rule 12, as the procedural rules in forfeiture and admiralty practice serve different purposes from the procedural rules in normal civil practice. It argues that forfeiture proceedings carry a substantial danger of false claims, a danger not inherent in civil proceedings where the defendant is a known entity, and that full compliance with each of the steps in Rule C(6)'s pleadings scheme is required to ensure a claimant's bona fides. The government raises the specter of wasteful litigation against wily false claimants whose claims may at first seem genuine, but whose illegitimacy would presumably be revealed in the answers and responses to interrogatories. The government urges that "[i]t is simply wrong to require [it] to try its case . . . before the claimant answers the complaint and responds to the first set of interrogatories," and asserts that it has "every right to insist on the answers to certain questions before engaging in litigation . . . over the funds." It then concludes that because the answer and responses to interrogatories are essential to the goal of "smoking out" false claims, they are a requirement of Rule C(6) that cannot be overridden by the provision for motions in Rule 12.

This argument appears to be one of efficiency, that is that by permitting extensive inquiry into the nature of the claimant's interest in the property, the court will be able to avoid being burdened by proceedings by a claimant who might not have a real interest. But we conclude that any concern as to a waste of judicial resources is laid to rest not only by the requirement that the claimant file a verified claim to the funds, but also by the very tactic the government decries, namely, the early motion to dismiss. If the claimant would have succeeded on the motion to dismiss, it would be a waste of resources to require the claimant to answer extensive interrogatories before making the motion to dismiss. And, in the present case, the government linked Kesten to the seized money in its complaint — having stated "Pires is the principal in Kesten Development Corp. which maintained the Venus account at

MTB Bank" — and cannot seriously contend that Kesten is feigning its interest in the seized property.[12]

By resorting to policy arguments regarding the different motivations behind the Supplemental and Civil Rules, moreover, the government's argument misses the mark; it fails to grasp the way that the Civil Rules apply in forfeiture. As the Supreme Court explained in *Miner*, the Supplemental Rules are not comprehensive. *See Miner*, 363 U.S. at 648. The Civil Rules provide the basic procedures for forfeiture; the Supplemental Rules are simply an overlay — they are, as their title indicates, *supplemental*. In finding that Rule 12(a)(4) modifies Rule C(6) the same way it modifies Rule 12(a)(1), we are not distorting the statutory scheme; rather, we are carrying it out. We are applying the Supplemental Rules and the Civil Rules in the manner dictated by Supplemental Rule A. The government's position that Rule C(6) "encompasses the entire field" of forfeiture pleadings and disallows pre-answer motions by *failing to mention them* cannot be logically reconciled with Rule A's instruction that we look to the Civil Rules when the Supplemental Rules are *silent* on a particular procedural provision. Policy arguments cannot alter or undermine this clear statutory directive.

The government is right that it should not be forced to try its case before an answer is filed and it receives meaningful

---

12. In questioning Kesten's "bona fides," the government appears to be attacking, in a roundabout way, that aspect of the District Court's order holding that Kesten had demonstrated a sufficient possessory interest in the funds to establish statutory standing to contest the forfeiture. *See supra* n.9. The government's fears that Kesten is a false claimant were actually addressed by that ruling. The Court examined Kesten's verified claim, considered the arguments advanced by the government, and held that Kesten was a genuine claimant. The government has not cross-appealed the District Court's ruling on that point, nor does it assert that the District Court should have *stricken* Kesten's claim because it failed to meet the requirements of Rule C(6). Rather, its sole contention on appeal is that the District Court properly held that under Rule C(6), Kesten may not file a motion to dismiss before answering the complaint. As the issue of Kesten's statutory standing was decided by the District Court and is not before us, we find unavailing the government's attempt to argue that Kesten's failure to file an answer affects its standing.

discovery. But it simply does not follow that Kesten should be required to serve an answer and respond to the interrogatories before it files a motion to dismiss. We are not compelling the government to litigate the ultimate issue of forfeiture any sooner than we normally ask plaintiffs to prove their cases. We are merely requiring it to defend against a motion to dismiss the complaint that raises preliminary issues before it imposes upon Kesten a great deal of burdensome discovery, just as we require plaintiffs in normal civil cases to defend the adequacy of their complaints before the defendant must file an answer.

Because we find no inconsistency between Rule C(6)'s timing requirements and Rule 12's authorization of pre-answer motions, we will reverse the District Court's order dismissing Kesten's motion to dismiss for lack of standing and compelling Kesten to respond to the interrogatories. Accordingly, we will vacate the orders entered thereafter and the final judgment of forfeiture, so that Kesten's claim to the funds and its motion to dismiss are reinstated.

## B. Statute of Limitations

Kesten urges that instead of remanding for the District Court to consider the motion to dismiss, we should rule that, based on the record before us, the government's forfeiture complaint was indeed untimely.[13] We would normally decline to address issues not passed upon below, but we will address at least preliminarily certain issues presented by Kesten's motion to dismiss, as it presents an issue of statutory interpretation that we deem to be a question of some importance, and that was specifically raised and argued by the parties. *See Loretangeli v. Critelli*, 853 F.2d 186, 189 n.5 (3d Cir. 1988) ("This court may consider a question of pure law even if not raised below where . . . the issue's resolution is of public importance.").

Kesten argues that the government failed to file its complaint within the one year limitation set forth in 18 U.S.C. § 984, and urges us to hold that the District Court

---

13. Kesten appears to acknowledge that the other grounds for dismissal that it raised in its motion before the District Court would be more appropriate for consideration on remand.

must dismiss the complaint on this basis. The government responds with two arguments: first, although it did not *file the forfeiture complaint* within a year of the offense, it met the one year limitation in section 984 by *seizing the funds* within one year. Second, the government argues that even if it did not meet the timing requirement in section 984, the entire complaint is not barred, because it met the five year limitation period for forfeiture claims under section 981, and the record has not yet been developed with respect to its claim under that section.

A brief detour to examine the interaction between 18 U.S.C. § 981 and 18 U.S.C. § 984 is necessary background for our discussion. Section 981 sets forth the cause of action for the forfeiture of property involved in money laundering offenses. *See* 18 U.S.C. § 981(a)(1)(A) ("The following property is subject to forfeiture to the United States: (A) any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property."). In forfeitures under section 981, the government is required to trace the seized property directly to the offense giving rise to the forfeiture. This can prove difficult when the underlying property is funds that can be deposited in a bank account, withdrawn, and replaced with new, untainted funds, or may be commingled with untainted funds within one account. We have held in the criminal forfeiture context that "the term 'traceable to' means exactly what it says," and have avoided "the problems plaguing other courts that have attempted to devise a workable tracing analysis for tainted property that has been commingled in a bank account with untainted property" by requiring the government to prove "*some* nexus to the property 'involved in' the money laundering offense." *United States v. Voigt*, 89 F.3d 1050, 1087 & n.22 (3d Cir. 1996) (construing 18 U.S.C. § 982(a)(1)). In *Voigt*, we suggested that the same analysis would apply in the civil context. *Id.* at 1087 n.23 (citing *United States v. $448,342.85*, 969 F.2d 474, 477 (7th Cir. 1992)). Thus, where funds involved in a money laundering offense have been commingled with untainted funds, it may be difficult to prove that the funds are "property traceable to" other funds. Difficult, but not necessarily impossible.

Section 984 is a "substitute asset provision" enacted to overcome these tracing difficulties and ease the government's burden of proof in civil forfeiture proceedings involving fungible property. It states in relevant part:

> Civil Forfeiture of Fungible Property
>
> (a) This section shall apply to any action for forfeiture brought by the Government in connection with any offense under section 1956, 1957, or 1960 of this title . . . . (b)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution, or other fungible property — (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property. (2) Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section. (c) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture *may be commenced* more than 1 year from the date of the offense.[14]

18 U.S.C. § 984 (emphasis added). Thus, section 984 is not by its terms a separate action for forfeiture. Rather, it applies to, and modifies the requirements of, forfeiture actions in which the subject property is cash or other fungible property. Under section 984, the government need not identify the specific property involved in the money laundering scheme, nor may a claimant raise as a defense the property's removal and replacement by identical property. Identical property that is not directly traceable to the offense but is found in the same place or account as the property actually involved in the offense may therefore be forfeited. However, Congress put a limit on this eased

14. We cite to section 984 as codified in 2000, when the forfeiture complaint was filed. Section 984's provisions have since been redesignated, but no substantive change has been made.

burden, providing that any action to forfeit property not directly traceable to the offense "be commenced" within one year.

The threshold issue that we confront here is whether under section 984, the commencement of the action means the government must *file the forfeiture complaint* within one year of the date of the offense, or may it be met by the government's *seizure of the funds* within one year. For if seizure is sufficient, the government timely commenced the action. If the action is only commenced by the filing of the complaint and if the government here needs to rely on section 984 because it cannot trace, then the action was not in time. We hold that section 984, by its plain and unambiguous language, requires the filing of a complaint within one year of the offense.

We begin, as we must, with the language of the statute itself. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). Where the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917).

Section 984(c) states that "no action pursuant to this section to forfeit property not directly traceable to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense." In everyday parlance, the term "commenced" may arguably be open to interpretation. One might think that the government could "commence" a forfeiture action in any number of ways, by beginning an investigation, say, or seizing the property, or even by filing a complaint. However, where a time limitation for instituting civil proceedings is concerned — as it clearly is here — the word "commence" is a term of art with only one unambiguous meaning, expressed in Federal Rule of Civil Procedure 3: "A civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. In the context of civil actions, the word "commence" does not encompass broad concepts, but rather requires "invocation of the judicial process." *McNeil v. United States*, 508 U.S. 106, 112 (1993) (holding that the receipt of a formal denial from an administrative agency did not "institute" an action under the Federal Tort Claims Act

because the words "institute," "begin," and "commence" must be read to require "invocation of the judicial process"). Thus, we conclude that, when read properly to incorporate a term embedded with such legal significance, section 984 requires the government to file a forfeiture complaint within one year of the underlying offense.

We note that our reading of the word "commenced" as used in section 984 is consistent with the interpretation that we and other federal courts of appeals have given to the same word in the statute of limitations generally applicable to civil forfeiture actions, 19 U.S.C. § 1621. Section 1621 provides that forfeiture actions must be "*commenced* within five years after the time when the alleged offense was discovered." 19 U.S.C. § 1621 (emphasis added). Courts have uniformly interpreted this provision to require the government to *file a complaint* within five years, and have found actions to be untimely where the government had seized the funds within five years but not filed a complaint. *See Mantilla v. United States*, 302 F.3d 182, 184 (3d Cir. 2002) (indicating that the five-year statute of limitations had lapsed where the government had seized the property but never instituted forfeiture proceedings); *see also United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1202 (9th Cir. 2001) ("At the time Appellants filed their Rule 41(e) motion, the statute of limitations had run on the United States' ability to commence forfeiture proceedings against seized property that had not already been subject to forfeiture proceedings initiated by the United States."); *United States v. $30,006.25*, 236 F.3d 610, 612 (10th Cir. 2000) (forfeiture action barred by statute of limitations because complaint was not filed against seized property within five years); *United States v. $515,060.42*, 152 F.3d 491, 501-03 (6th Cir. 1998) (same). Furthermore, the Supreme Court has recognized in dictum that a forfeiture action is "commenced" under section 1621 when a complaint is filed. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 65 (1993) ("The Government filed the action in this case within the 5-year statute of limitations, and that sufficed to make it timely."). We see no reason to depart from the settled meaning of the term "commenced" as it has always been understood in the context of civil forfeiture proceedings.

The government urges that legislative history contradicts our plain reading of the statute. It quotes extensively from a House Committee Report, set forth fully in the margin, that it contends reflects Congress's intent to allow the government to satisfy section 984's one year time requirement either by filing a complaint *or* seizing the property. *See* H.R. Rep. 102-28, pt. 1, at 47-48 (1991).[15] The government argues that Congress included the one year time limit in order to ensure that the seized property had a reasonable nexus to the underlying offense. If the time between the offense and the seizure is relatively short, then that nexus will still be satisfied, without regard to when the complaint was actually filed.

While it may be a plausible reason for reading the timing requirement in this way, we are not persuaded to rethink our interpretation of the clear language in section 984 on the basis of a few sentences in a Committee Report and the government's views as to Congress's motives. When we read statutes, we must "presume[] that Congress expresses its intent through the ordinary meaning of its language." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001). Section 984 says what it means and means what it says. We will not wade into the depths of legislative history when the surface of the statute is clear and its meaning apparent.

Court opinions that reference the Committee Report in

15. The Report states:

> Section 984 provides that in cases involving fungible property, property is subject to forfeiture if it is identical to otherwise forfeitable property, is located or maintained in the same way as the original forfeitable property, and not more than one year has passed between the time the original property subject to forfeiture was so located or maintained and the time the forfeiture action was initiated by seizing the property or filing the complaint, regardless of whether or not the fungible property was continuously present or available between the time it became forfeitable and the time it was seized. (The time limitation is considered necessary to ensure that the property forfeited has a reasonable nexus to the offense giving rise to the original action for forfeiture).

*Id.*

dicta stand on no greater footing. *See United States v. Funds Representing Proceeds of Drug Trafficking*, 52 F. Supp. 2d 1160, 1166 (C.D. Cal. 1999); *United States v. All Funds Presently on Deposit*, 832 F. Supp. 542, 558-59 (E.D.N.Y. 1993). In *Funds Representing*, the court was presented with a situation different from that here. There, the government had filed the complaint within a year but did not seize the funds within the year. The court, relying on Rule 3, held that the filing of the complaint was sufficient to meet the timing requirement. 52 F. Supp. 2d at 1166. It then noted that, according to the Committee Report, either a filing or a seizure within a year would "commence" the action. *Id.* This statement, however, was dictum and not necessary to its disposition; the court's holding, that the filing satisfied the timing requirement, is entirely consistent with our reading of section 984. *All Funds* deserves even less weight in this context. There, the court quoted the Committee Report at length in the course of examining the history of tracing requirements in civil forfeiture, but did not apply that history to the issues before it. 832 F. Supp. at 558-59. Thus, although both opinions acknowledge the Committee Report, neither provides a basis for us to follow the interpretation of section 984 advanced by the government.

We therefore hold that in order to forfeit property that is not directly traceable to the offense under section 984, the government must file a complaint within one year of the date of the offense. Here, the government concedes that it did not do so.

But that does not end the inquiry. The complaint invokes section 981 as the base cause of action, and section 981 carries with it a five year statute of limitations, which was clearly met here. Thus, Kesten's motion to dismiss will succeed only if the government cannot fulfill the tracing requirement under section 981, such that it needs to resort to section 984.[16] We leave that to the District Court to develop on remand.

---

16. At oral argument, Kesten argued that the complaint does not sufficiently allege a cause of action under section 981 because it does not allege that the funds are directly traceable to the money laundering, and urged us to dismiss the complaint for that reason. However, the sufficiency of the complaint regarding the tracing element was not raised in the briefs as a basis for dismissal of this action, therefore we express no opinion on that issue.

## C. Discovery Sanction

Finally, although Kesten's argument that the District Court abused its discretion in dismissing Kesten's claim as a sanction for Kesten's failure to produce Pires for a deposition in the United States might appear moot in light of our ruling, nonetheless, on remand, should the Court conclude that the government's claim was properly filed under section 981, the issue of Kesten's discovery conduct may again arise. We therefore take this opportunity to emphasize the proper methodology that we have previously held applies in determining whether the sanction of dismissal is warranted for discovery violations.

As we have often noted, the sanction of dismissal is disfavored absent the most egregious circumstances. *See Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867-68 (3d Cir. 1984). We have opined that six important factors must be weighed by a district court in determining whether the harsh sanction of dismissal is justified:

> 1) the extent of the *party*'s personal *responsibility*; (2) the *prejudice* to the adversary cause by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

*Id.* at 868. In reviewing such a sanction, we look to the manner in which the district court balanced these factors. *See, e.g., Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 692 (3d Cir. 1988). Although we have stated that "[n]ot all of these factors need be met for a district court to find dismissal is warranted," *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988), we have always required consideration and balancing of *all six* of the factors, and have recommended the resolution of any doubts in favor of adjudication on the merits. *Scarborough v. Eubanks*, 747 F.2d 871, 878 (3d Cir. 1984).

Here, the District Court addressed only *four* of the six *Poulis* factors: the extent of Kesten's responsibility, the prejudice to the government, the willfulness of Kesten's

conduct, and the effectiveness of alternative sanctions, finding that these factors weighed in favor of dismissal. In so doing, the Court ignored both the merits of Kesten's defenses and a lack of dilatory conduct, factors that strongly caution against dismissal. Should the government again move for dismissal as a discovery sanction, we note that the District Court should balance all six of the relevant factors in considering any such motion.

## IV.

Because Kesten's motion to dismiss was incorrectly dismissed, we will reverse the District Court's order, vacate the discovery and sanction orders and the final judgment of forfeiture entered thereafter, and reinstate Kesten's claim and its motion to dismiss. Although we hold that the government's complaint was untimely if it must rely on section 984, we will not dismiss the complaint, but rather will remand for the District Court to permit the complaint for forfeiture to proceed under section 981.

A True Copy:
     Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*